## Moses v. Proctor Coal Company.

(Decided November 18, 1915.)

### Appeal from Whitley Circuit Court.

1. Master and Servant—Safe Place Doctrine.—A·coal miner who was ordered to report for duty in a certain room in a mine on a certain day, went there at the time indicated; but finding the place not prepared for his work, and another servant·of the coal company engaged in preparing it therefor, voluntarily assisted therein, while doing which he was injured by the explosion of a blast set off by a miner in an adjoining room, which blast broke through the wall of the room. It was held that the injured servant was entitled to the benefits of the obligation of the safe place doctrine.

2. Damages—Elements of Compensatory Damages—Future Suffering.—Where it appears from the evidence that the plaintiff will continue to suffer from his injuries after the date of the trial, he is entitled to an instruction permitting recovery for future suffering.

3. Negligence—Contributory Negligence—Instruction.—A form of instruction on contributory negligence indicated.

4. Trial—Argument of Counsel—Limiting Time Therefor.—Where the trial of a personal injury action consumed the entire day, and sixteen witnesses were examined, and eight instructions were

given, twenty minutes on a side was not sufficient to present reasonably the several matters necessary to be brought to the attention of the jury.

R. S. ROSE and R. L. POPE for appellant.

TYE, SILER & GATLIFF for appellee.

OPINION OF THE COURT BY JUDGE HANNAH.—Reversing.

Mart Moses sued the Proctor Coal Company in the Whitley Circuit Court to recover damages for injuries sustained by him while working in the defendant's coal mine at Red Ash on July 13, 1914. He obtained a verdict and judgment in the sum of two hundred and fifty dollars; but, deeming the sum awarded insufficient to compensate him for his injuries, he appeals, insisting that the trial court erred in instructing the jury and in limiting the argument to twenty minutes on a side.

The plaintiff and his brother were engaged in what is termed "robbing," that is, the extraction of pillars and stumps. On Thursday before the Monday on which plaintiff was injured, they had completed the work to which they had heretofore been assigned, and were informed that there would be no place available for them to work in until the following Monday, the mine foreman promising to have a certain room prepared in the interim so that they could go to work therein on that day.

On Monday, the plaintiff and his brother went to the place or room in question, and upon their arrival there they found that the room was not quite ready for them in that the track was not in proper position. George Woods, another servant of the company, was engaged in preparing the room for their work. It was necessary to pull the track over next to the side of the room; Woods was unable to do this by himself, and he requested plaintiff and his brother to assist him, which they did. After the track was moved over, plaintiff was assisting Woods in setting some timbers, when a miner in an adjoining room exploded a charge of powder in shooting down coal, broke through the connecting wall between his room and that in which plaintiff was working, and injured him.

1. The court gave the following instruction on the measure of damages: "If your verdict is for the plaintiff, Moses, you will find for him such a sum in

damages as you may believe from the evidence will fairly and reasonably compensate the plaintiff, Moses, for the pain and suffering, if any, he has suffered, and for the permanent destruction of his power to earn money, if any, he has suffered, as the direct and proximate result of the carelessness or negligence of the defendant company as predicated in instruction No. 1 above, not to exceed, however, the sum of $30,000, the amount claimed in plaintiff's petition.''

The plaintiff asked an instruction, which, in addition to the elements of damages mentioned in the instruction given, also authorized the jury to find for such mental and physical pain as he had already suffered and such as it was reasonably certain he would endure in the future as the direct result of his injuries so sustained, and the court declined to give such an instruction.

This was error, as there was some evidence tending to show that plaintiff's suffering from the injuries in question had not ceased at the time of the trial. See Hobson, Blain & Caldwell on Instructions, sections 216, 217, and the authorities thereunder city; C. & O. Ry. v. Johnson, 145 Ky., 481, 140 S. W., 687; Howard v. Henderson Traction Company, 121 S. W., 954; L. & N. v. Logsdon, 114 Ky., 746, 71 S. W., 905, 24 R., 1566; L. & N. v. Lynch, 137 Ky., 696, 126 S. W., 362.

Where it appears from the evidence that the plaintiff will continue after the trial to endure suffering from his injuries, he may recover therefor, regardless of whether there is permanent impairment of earning power pleaded or proven. L. & N. v. Stewart, 163 Ky., 164, 169 S. W., 841.

2. The action was defended upon the theory that the plaintiff, at the time he was injured, was not in the course of his employment; that he was employed to extract coal; that the working place was not ready for him; and that he was a mere volunteer, or was assisting George Woods to discharge duties which Woods alone was under obligation to perform. And it is now contended by appellee that it was entitled to a directed verdict, hence there should be no reversal of the judgment, even if the trial court did err in the instructions given.

We are not impressed with the contention that defendant owed to plaintiff no duty at the time he was injured. It may be conceded that he was not at that time engaged in the performance of any work for which he

was employed, and that he was doing work for which the coal company was under no obligation to pay him. But he was at the place where he had been ordered to report for work; and whether he sat down to watch another servant make the place ready, or whether he voluntarily assisted that servant in doing so, the company's duty to provide him with a reasonably safe place obtained.

This case is somewhat analagous to those wherein the servant is injured while going to or from his place of work in a mine. The rule in such cases is that the duty to provide a reasonably safe place includes the places where the servant properly passes in going to and from his actual working place. See Fluehart Collieries Company v. Elam, 151 Ky., 47, 151 S. W., 34; Broadway Coal Mining Co. v. Robinson, 150 Ky., 707, 150 S. W., 1000; Jellico Coal Mining Co. v. Woods, 154 Ky., 683, 159 S. W., 530.

If the plaintiff in the instant case had been passing this spot where the explosion occurred, on his way to or from the face of the coal at the back end of the room, which was his place of work, and which was about fifty feet from the place where he was injured, he certainly would come within the safe place doctrine; and, we think the mere fact that he was temporarily assisting Woods to prepare the place so that he could commence his work, would not operate to exclude him from the benefits of the obligation of that doctrine, for he was there in obedience to the orders and instructions which he had theretofore received from the company's mine foreman.

3. The court admitted evidence and gave an instruction covering defendant's plea that Woods was an independent contractor, and appellant complains of this. It was error to admit this evidence and to give such an instruction. Woods was not an independent contractor. Bon Jellico Coal Company v. Murphy, 161 Ky., 450, 171 S. W., 160. In fact, Woods denied that he even asked plaintiff and his brother to assist in moving the track or setting the timbers, and there was no evidence to support defendant's claim that plaintiff was working for Woods.

4. There was a plea of contributory negligence, and some evidence that the plaintiff knew that the miner in the adjoining room was boring a hole in the wall and placing a shot, notwithstanding which knowledge he (the

plaintiff) continued to work in the room where he was injured. The defendant was entitled to an instruction on contributory negligence, but the ones given (Nos. 4 and 6) were prolix and confusing.

There was no material conflict in the evidence. There were but three real issues to submit to the jury: (1) did defendant exercise ordinary care to furnish plaintiff with a reasonably safe place in which to work? (2) was plaintiff guilty of contributory negligence? (3) the measure of damages.

Upon another trial, the court will give the following instructions:

"No. 1. It was the duty of the defendant to exercise ordinary care to provide the plaintiff at the time when and the place where he was injured, with a reasonably safe place in which to work considering the character and nature of his employment; and if the jury believe from the evidence that the defendant negligently failed to perform this duty, and that as a direct result of such failure (if any such failure there was) the plaintiff was injured, the jury will find for plaintiff; and unless they so believe, or if they believe as in instruction No. 2, they will find for the defendant."

"No. 2. It was the duty of plaintiff, Moses, to exercise ordinary care for his own safety at the time and place of his injury; and if the jury believe from the evidence that he failed to perform this duty, and that such failure (if any there was) upon his part, contributed to his injury to such an extent that but for it he would not have received such injury, then the jury will find for the defendant, although they may believe from the evidence that defendant was negligent as defined in instruction No. 1."

"No. 3. If the jury find for plaintiff, they will award him damages in such sum as they may believe from the evidence will reasonably compensate him for such mental and physical pain as he has suffered and is reasonably certain to suffer, if any, as the direct result of his injuries; and, if the jury believe from the evidence that his injury is permanent, they will award him such further sum as they may believe from the evidence will reasonably compensate him for the permanent impairment of his power to earn money, if any, the whole of said finding, however, not to exceed the amount claimed in the petition, $30,000."

These three instructions, together with one defining negligence and ordinary care, and one permitting nine or more of the jury to agree, are all the instructions that should be given, if the evidence on another trial be substantially the same.

5.   The trial of the case consumed one whole day. There were sixteen witnesses examined.   There were eight instructions given.   The court limited the argument to twenty minutes on a side, and we think this time insufficient to present reasonably the several matters necessary to be brought to the attention of the jury under the evidence and the instructions given.

For the reasons indicated, the judgment is reversed.