208 P.2d 815

**DOWNER v. SOUTHERN UNION GAS CO.**

No. 5181.

Supreme Court of New Mexico.

Aug. 1, 1949.

W. A. Keleher, Albuquerque, A. H. Mc-Leod, Albuquerque, H. C. Palmer, Aztec, for appellant.

Hannett & Hannett, Albuquerque, for appellee.

McGHEE, Justice.

The appellant, defendant below, seeks the reversal of a judgment for $5,000 awarded to the appellee, plaintiff below, in accordance with the verdict of a jury on account of the death of Monte Davis Payne, Jr., a child of the age of 2 years and 8 months, who was run over by a truck being driven by a 17 year old employee of the defendant. We will refer to the parties as they appeared in the trial court

The defendant operated a gas treating plant on a lease at Barker Dome in San Juan County, where it maintained six houses built along a private roadway for the use of its employes. At the entrance to the roadway there was a sign warning drivers of motor vehicles to watch out for children playing in the street. On the morning of the accident the driver of the truck had been directed to go to Farmington for a load of salt. It was the custom of the employes residing on the lease to send to town by the drivers of trucks for needed items. The truck driver had stopped at his own home for a grocery list and was then stopped by the mother of the child and asked to pick up an express shipment at Farmington. He was also asked to return a case of empty milk bottles and bring out fresh milk for the Payne family. The father of the child loaded the milk bottles on the truck and then returned to his house, chatted a moment with his wife and had sat down in the living room when his wife called to him and stated that the child was in front of the truck. Instead of immediately proceeding on his way after the milk bottles were loaded the driver of the truck, Dean, had tarried for a time and lighted a cigarette. Payne, the father of the child, states that he immediately broke through the screendoor and hollered to Dean to hold; that the truck was then slowly rolling, but that instead of putting his foot on the brake Dean stepped on the starter and thus jumped the truck forward and the right front wheel went over the body of the child. Dean claims that he looked backward and forward before starting the truck, that he did not see the child, and that he struck the child just as Payne "hol-

lered" at him. When Dean stopped the truck in front of the Payne house the child was some ninety feet in the rear playing on a sand pile with another child. It is clear that the emergency brake on the truck was not in working order.

The defendant first claims that the trial court erred in not directing a verdict in its behalf because the plaintiff had failed to establish sufficient negligence on the part of the driver of the truck to support a verdict for the plaintiff.

It is undisputed that children continually played in the roadway; in fact, there was a sign presumably put up by the defendant, warning drivers of motor vehicles to watch out for children playing in the road, and the driver knew of these facts. In addition, if the testimony of the parents of the child is to be believed, when Payne made his urgent call to hold, the driver of the truck stepped on the starter and jerked the truck forward instead of applying the foot brake.

We are of the opinion that there is ample evidence to sustain the verdict on two points. First, failing to keep a lookout for the child in the street; and, second, stepping on the starter instead of applying the brake when he heard the outcry of the father of the child.

Shortly after the death of the child his parents had executed a release to the defendant and Dean on payment of medical and burial expenses in the sum of $203. This release was in the usual form and it was pleaded in bar of the action. To avoid the release the plaintiff pleaded that it had been procured by fraud, in that the superintendent of the defendant company had orally agreed that if they would sign the release, Payne, the father of the child, would be given permanent employment by the defendant at no lower pay than he was then getting, that the trucks would be kept off the roadway in front of the houses, and that a fenced playground would be built for the children; that in violation of this agreement Payne was discharged a few months later on the false claim that he had reported for work when he was under the influence of intoxicating liquor or some drug. The defendant also claimed that as the servant Dean had been released this action could not be maintained against it or the release avoided when Dean was not a party to the action.

It must be kept in mind that the release was procured by the defendant, and if it committed a fraud upon the parents of the child in its procurement it ill lies in its mouth to assert that the plaintiff may not show its fraud without the joinder of Dean. We approve the rule as stated in Serr, Respondent v. Biwabik Concrete Aggregate Co., 202 Minn. 165, 278 N.W. 355, 362, 117 A.L.R. 1009, as follows: "Defendant's fourth ground of attack is likewise interesting but ineffective. It is well es-

tablished, of course, that a valid release of one joint tort-feasor is a release of all others jointly liable. 5 Dunnell, Minn.Dig. 2d Ed. & Supps.1932, 1934, 1937, § 8373; 53 C.J. p. 1254, § 77. Equally well settled is the rule that a valid release or exoneration of the servant releases the master, the latter's liability for a tort committed in the scope of employment being derivative only. 18 R.C.L. p. 776, § 236; Doremus v. Root, 23 Wash. 710, 63 P. 572, 54 L.R.A. 649. The escape of one, however, is predicated upon the existence of a valid and subsisting release of the other. But where, as here, the release itself is attacked, the reason for the rule collapses and takes the rule with it. Where defendant sets up in bar a release to another claimed joint tort-feasor, the test is what would happen if the other were sued. Chicago and Alton Railroad Company v. Wagner, 239 U.S. 452, 36 S.Ct. 135, 60 L.Ed. 379. And it makes no difference that the one already released is not a party to the action. Since one tort-feasor can assert in bar a release to a fellow tort-feasor without joining the latter, it is not only just, but logical, to allow plaintiff to set up its invalidity without being required to make the other a party. The real and only inquiry in such case is the existence or nonexistence, validity or invalidity, of a claimed release, not the presence or absence as a party of the one purportedly released. Hence, the involved release itself being the only issue, the attack need be directed only as against it, and not as against the one in whose favor it was executed. The presence of the latter becomes unimportant. Holding the release ineffective, as we do, places the parties in the same position as if there had been no release at all. Absent a release, no one can deny that the injured party can sue either the master or servant or both. By refusing to attack the release as against Taylor, plaintiff simply chose to assert her right against his corporation alone, as she could have done had there been no release in the first instance. Her cause did not depend upon this instrument, but defendant's defense did. It was up to it to establish its position so as to withstand plaintiff's counter attack. This it failed to do."

See also 35 Am.Jur. p. 963, where the doctrine is stated that the release of the master releases the servant and vice versa, and then closes with the statement: " * * and of course if the release is invalid because of mutual mistake, fraud, etc. it is not available as a defense to either the master or the servant."

■ It was for the jury to determine from the evidence under proper instructions whether the release was procured by fraud.

This brings us to a consideration of the claim that the trial court erred in striking the last sentence of the defendant's tendered instruction No. 1 before incorporat-

ing it in the instructions given to the jury. As tendered, the instruction read: "You are instructed that before plaintiffs can recover, the burden is on them to prove that the release, which has been introduced, was procured by fraud. The burden is on the plaintiffs to show that such release was not the Paynes' free and voluntary act. The presumption is that the release is valid and binding on all of the plaintiffs, and this presumption will not be overcome by a mere preponderance of the evidence. On the contrary, fraud must be shown by evidence of the clearest and most satisfactory character before the release will be set aside. The proof necessary to destroy the recitals in a written instrument must be clear, satisfactory, and specific, and of such a character as to leave in the minds of the jury no hesitation or substantial doubt, and unless you are so satisfied as set out in this instruction, your verdict will be for the defendant."

The instruction as given advised the jury that a mere preponderance of the evidence was not sufficient to overcome the release, but that on the contrary the fraud must be shown by evidence of the clearest and most satisfactory character before it could be set aside. It meets the test prescribed by this court in Berrendo Irrigated Farms Co. v. Jacobs, 23 N.M. 290, 168 P. 483, and Frear v. Roberts, 51 N.M. 137, 179 P.2d 998. Three other instructions were given on the point, and we hold that the jury was fairly and properly instructed on this issue.

We will now consider the claim of the defendant that the court erred in permitting the plaintiff to show that the driver of the truck did not have a chauffeur's license, and in submitting to the jury the question of whether the truck was being operated in violation of law on account thereof, and in advising the jury that such action might in itself make the defendant guilty of negligence per se; thus injecting as it claims a false issue into the case.

Before this issue could properly be injected into the case it was incumbent upon the plaintiff to show that Dean was one of the class required by statute to have such a license. Sec. 68-301(g), 1941 Comp., defines a chauffeur as follows: "Every person who is employed for the principal purpose of operating a motor vehicle, and every person who drives a motor vehicle while in use as a public or common carrier of persons or property."

Subparagraph (i) of the same section defines a highway as follows: "Every way or place of whatsoever nature open as a matter of right to the use of the public for the purpose of vehicular travel. The term 'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities or other institutions."

Section 68-302, 1941 Comp. reads: "No person, except those hereinafter expressly exempted shall drive any motor vehicle upon a highway in this state unless such person has a valid license as an operator or chauffeur under the provisions of this act. No person shall operate a motor vehicle as a chauffeur unless he holds a valid chauffeur's license under this act. * * *"

The accident occurred on a private roadway on the lease of the defendant. It is true that the title to the land is in the United States, but the defendant was there operating under a lease, and it cannot be seriously questioned but that it had the status of an owner under the Motor Vehicle Act. It would serve no useful purpose to set out the testimony offered to show that the principal occupation of Dean was that of a truck driver, but it is insufficient to prove that he was employed for the principal purpose of driving the truck or that he devoted the majority of his time to such work.

 As heretofore indicated, there is sufficient evidence of negligence on two points to sustain the verdict, but we cannot say that the jury did not base their verdict in part on the fact that Dean was driving the truck without a chauffeur's license; and for error in this regard the judgment must be reversed in part.

The youth and inexperience of Dean may be shown at a new trial to aid the jury in determining the issues as to his negligence at the time of the accident.

 The jury was instructed that before it could return a verdict for the plaintiff it must find that the release was procured by fraud. As above stated, this issue was fully and fairly submitted to the jury and need not be again litigated. In other words, the release is out of the case.

See 3 Am.Jur.Secs. 1226, 1227 and 1228, Appeal and Error; 39 Am.Jur. Sec. 21, New Trial; Yazoo & M. Valley R. Co. v. Scott, 108 Miss. 871, 67 So. 491, L.R.A.1915E, 239, and annotations on page 239 et seq., Ann. Cas.1917E, 880

The judgment will be reversed insofar as negligence and damages are concerned, with instructions to grant the defendant a new trial on those issues only, And It Is So Ordered.

BRICE, C. J., and LUJAN, SADLER and COMPTON, JJ., concur.