**Thomas G. CARULOFF, Plaintiff,**

v.

**EMERSON RADIO & PHONOGRAPH CORPORATION, Defendant and Third-Party Plaintiff-Appellant,**

v.

**STANDARD KOLLSMAN INDUSTRIES, INC., Third-Party Defendant-Appellee.**

**Nos. 875, 876, Dockets 34681, 35285.**

United States Court of Appeals, Second Circuit.

Argued June 15, 1971.

Decided July 8, 1971.

874

William F. McNulty, Brooklyn, N. Y. (Helfenstein & Helfenstein, Brooklyn, N. Y., on the brief), for defendant and third-party plaintiff-appellant.

Harold Lee Schwab, New York City (Emile Z. Berman and A. Harold Frost, New York City, on the brief), for third-party defendant-appellee.

Before MOORE and KAUFMAN, Circuit Judges, and TIMBERS, District Judge.*

TIMBERS, District Judge:

Plaintiff, a television repairman, after a two week jury trial of a diversity action in the United States District Court for the Southern District of New York, before Irving Ben Cooper, District Judge, was awarded $300,000 for personal injuries sustained while he was servicing the tuner on a television set in Ohio on June 4, 1963. Plaintiff lost the sight of one eye when a wire retainer spring flew from the television tuner he was servicing. The tuner had been manufactured by Standard Kollsman Industries, Inc., third-party defendant. The television set in which the tuner was installed had been manufactured by Emerson Radio & Phonograph Corporation, defendant and third-party plaintiff.

This appeal does not involve the correctness of the judgment entered on the verdict in favor of plaintiff in the main action against Emerson. What is involved on this appeal is the correctness of the District Court's dismissal of Emerson's indemnity claim seeking recovery against Standard of the full amount of the judgment on grounds of Standard's alleged negligence and breach of implied warranty, 314 F.Supp. 631. Finding no error, we affirm.

At the trial of the main action against Emerson, plaintiff sought recovery on grounds of negligence and breach of implied warranty. Plaintiff's cause of action for negligence was based on claims of faulty design and manufacture of the tuner, and failure to warn repairmen of the inherent danger in removing the retainer spring while servicing the tuner. In response to special interrogatories, the jury found Emerson negligent but found no breach of implied warranty.

By stipulation, the parties agreed to submit for Judge Cooper's determination, after the trial of the main action and upon the evidence there adduced, Emerson's third party claim over for indemnity against Standard based on Emerson's allegations that Standard had been negligent in its manufacture of the tuner and that Standard had breached its implied warranty of fitness for use.

With respect to the negligence ground of Emerson's indemnity claim against Standard, under Ohio law, which the parties agreed was controlling, there are two essential elements: (1) that the negligence of the indemnitee (Emerson) be merely passive, and (2) that the negligence of the indemnitor (Standard) be active. See Delta Tank Mfg. Co. v. Weatherhead Co., 150 F.Supp. 525, 528–29 (N.D.Ohio 1957); American Radiator & Standard Sanitary Corp. v. Titan Valve & Mfg. Co., 246 F.2d 947, 950 (6 Cir. 1957); Larson v. Cleveland R. Co., 142 Ohio St. 20, 34–35, 50 N.E.2d 163 (Sup.Ct.1943). Judge Cooper did not reach the second essential element— whether there was active negligence on the part of Standard—for he found active negligence on the part of Emerson

* Chief Judge of the District of Connecticut, sitting by designation.

in breaching its independent duty to warn. We agree.

Substantial evidence establishing Emerson's active negligence was impressively marshaled by Judge Cooper. Two illustrations will suffice. The Director of Service for Emerson testified that the retainer wire in the modified tuner here involved should not have been removed unless special precautions were taken, such as the wearing of safety glasses and the utilization of a special tool designed to captivate the wire when it was released so as to prevent its springing out. And yet Emerson's service manual (the "bible" for television repairmen) made no mention of any modification in the design and construction of the tuner; nor did it contain a word of caution or of explanation as to the safe procedure to be followed when servicing the tuner.

Another television repairman with over twenty years experience testified that when he removed the retainer spring in the same manner as plaintiff—using a screwdriver—the spring flew from the tuner and struck him in the forehead.

■ We think there was ample evidence to support Judge Cooper's conclusion that Emerson was negligent in relying on the average repairman to protect himself against remote contingencies while attempting to service a new and sophisticated tuner which was not explained in the service manual; and especially in omitting from its manual any mention of the modification in design that Emerson should have known would require a significantly new *modus operandi* by anyone servicing the tuner.

Moreover, Emerson had conducted extensive tests on the tuner and knew of the danger inherent in the retainer spring. We hold that it was actively negligent in failing to warn repairmen of that danger.

■ With respect to the breach of warranty ground of Emerson's indemnity claim against Standard, again the parties agreed that the New York six year statute of limitations was controlling.[1] The only dispute was when the indemnity claim accrued. The tuner was sold by Standard to Emerson in 1955. Emerson's third party action against Standard was commenced in 1966. Relying on Mendel v. Pittsburgh Plate Glass Co., 25 N.Y.2d 340, 253 N.E.2d 207, 305 N.Y.S. 2d 490 (1969), Judge Cooper held that the breach of warranty claim accrued at the time of the sale of the tuner by Standard to Emerson in 1955 and therefore was barred by the six year statute of limitations. We agree. Although *Mendel* did not involve an indemnity claim, the Court of Appeals squarely held as a matter of public policy that a cause of action for breach of warranty against a manufacturer is barred six years after sale "to prevent the many unfounded suits that would be brought and sustained against manufacturers ad infinitum." 25 N.Y.2d at 346. See also Perez v. Chutick & Sudakoff, 50 F.R.D. 1, 2–3 (S.D. N.Y.1970); C. K. S., Inc. v. Helen Borgenicht Sportswear, Inc., 22 A.D.2d 650, 253 N.Y.S.2d 56 (1st Dept. 1964); City & County Savings Bank v. Kramer & Sons, 43 Misc.2d 731, 252 N.Y.S.2d 224 (Sup.Ct.1964).

Affirmed.

---

1. In view of the agreement between the parties, we assume without deciding that this is so. Whether, absent such agreement, the New York courts would apply the *Mendel* doctrine, which arguably might be said to relate more to substance than procedure, to an out of state cause of action tried in the New York courts, we leave to another day for decision.