Kelly *v.* Hanscom Brothers, Inc., Appellant, et al.

Argued September 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Daniel T. McWilliams,* for appellant.

*John J. O'Brien, Jr.,* for appellees.

OPINION BY CERCONE, J., December 11, 1974:

This appeal arises from the lower court's granting of a motion for a directed verdict in favor of third party defendant, Ponnock & Sons, on the claim raised in the third party complaint of Hanscom Bros., Inc. Hanscom Bros. asserts that the directed verdict was erroneously granted and that it, therefore, is entitled to a new trial. We agree and will reverse and remand for a new trial.

The facts giving rise to the claim set forth in Hanscom's third party complaint are not in dispute. Hanscom Bros. is a Philadelphia retail variety store which did business with Ponnock & Sons, a wholesaler. Among the items which it purchased from Ponnock's was a line of vinyl squeeze toys of the type frequently seen in the playpens of infants. In the ordinary course of Hanscom's business, those toys would be resold to

Hanscom's patrons. Shortly before Easter in 1967, Georgetta Kelly purchased two such toys as Easter basket decorations for her twin infants, Patrick James and Lorrie Ann. The toys were individually wrapped in cellophane and, at the time of purchase, Mrs. Kelly noted nothing unusual about them. When Mrs. Kelly brought them home, her children saw them and grew excited about having them. Mrs. Kelly acceded to their clamoring, unwrapped the toys and placed them in the playpen with the children. When she returned later to look in on the children she noticed that her son was choking. Tragically, efforts to revive him were unavailing.

All parties conceded that the whistle in the base of the toy, which caused the toy to squeak when it was squeezed, fell into the boy's throat and lodged in his windpipe causing his death.

Mr. Kelly, acting as administrator for his son's estate, perfected a claim against Hanscom Bros. for wrongful death based upon both Section 402A of the Restatement of Torts, Second, and U.C.C. § 2-314. Hanscom Bros. brought in Ponnock & Sons, charging breach of the implied warranty of merchantability under Section 2-314 of the Uniform Commercial Code. Since the firm which sold the toy to Ponnock's was a Japanese concern, and presumably not amenable to process in Pennsylvania, no further parties were joined.

Shortly before trial the original plaintiff, Kelly, entered a settlement agreement whereby both Hanscom Bros. and Ponnock & Sons agreed to pay $10,000 each to the estate of his son. The agreement also provided that it did not affect the rights of Hanscom and Ponnock, inter se. Trial was held on the third party complaint, and the contested motion for a directed verdict was entered in favor of Ponnock on the theory that, as between two equally culpable and passively negligent tortfeasors, neither is entitled to be indemnified by

the other. The lower court, however, misconceived the basis for Hanscom's claim.

U.C.C. § 2-314[1] provides, in pertinent part: "(1) Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . . (2) Goods to be merchantable must be at least such as (c) are fit for the ordinary purposes for which such goods are used. . . ." It is clear that Hanscom Bros. presented sufficient evidence to reach the jury on the question of whether Ponnock & Sons sold an unmerchantable toy to them, thereby breaching the implied warranty of merchantability. The toy which caused the death of Patrick James Kelly was not fit as a plaything for infants, considering infants' universal penchant for putting things into their mouths, if its whistle could be so easily dislodged in a matter of minutes. As Comment 8 to Section 2-314 provides: "[P]rotection, under this aspect of the warranty, of the person buying for resale to the ultimate consumer is equally necessary, and merchantable goods must therefore be 'honestly' resalable in the normal course of business because they are what they purport to be." Hence, Hanscom's made out a prima facie case for breach of the warranty of merchantability by Ponnock & Sons.

The more difficult question concerns the proper measure of damages for that breach on the facts of this case. What confused the court below was the parties' insistence on characterizing that measure of damages as an "indemnity." Use of that misleading term resulted in the interjection of a host of principles and maxims which have no relevance to a cause of action in assumpsit. The fact that, from the standpoint of tort law, two intermediaries in the chain of distribu-

---

[1] 12A P.S. § 2-314 (1970).

tion of a product from manufacturer to consumer may stand on equal footing in relation to the consumer, or are both "passively negligent" in bringing about the harm, has no bearing on this case. The fact of the matter is that there was a contract here in which Ponnock & Sons was the promisor and Hanscom Bros., the promisee. Ponnock & Sons impliedly warranted to Hanscom's that the toy was fit for child's play, and Hanscom's passed that warranty on to the Kellys. Since the warranty was breached, Hanscom's was exposed to liability to the estate of Patrick James Kelly —a liability which they realized in the form of one-half of a $20,000 settlement payment to that estate. This being a contract action, equivalence of culpability, in the tortious sense of that term, is unavailing as a defense. Hanscom's did not get from Ponnock's what they were impliedly promised—a merchantable, i.e., childsafe, toy—although Ponnock's received the payment they were promised from Hanscom's.[2]

The issue, therefore, is whether consequential damages in the amount of $10,000 may be awarded to Hanscom Bros. because of the breach of the implied warranty of merchantability by Ponnock & Sons.[3]

U.C.C. § 2-715 provides: "(2) Consequential damages resulting from the seller's breach include (a) any

---

[2] The parties agreed that the toy was in the same condition when it was sold to Mrs. Kelly as it was when it was purchased by Hanscom Bros.

[3] "Damages for breach of the warranty would be those resulting from the breach in the ordinary course of events. Normally, the damages for such a breach are measured by the difference between the value of the goods accepted and their value as warranted, at the time and place of acceptance. But special circumstances showing proximate damages of a different amount will alter the rule, permitting incidental and consequential damages to be recovered in a proper case." *Wisniewski v. The Great Atlantic and Pacific Tea Company*, 226 Pa. Superior Ct. 574, 579-580 (1974).

loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. . . ." The provision for consequential damages in the Code is, of course, a liberal statement of the second rule of *Hadley v. Baxendale.*[4] Thus, in order for consequential damages to be recoverable under the Code they must not only be causally related to the breach, but also result from the buyer's requirements which the seller had reason to know at the time of contracting; in other words, foreseeable damages.

In the instant case the goods were sold under warranty to Hanscom Bros. with the knowledge that they would be resold to Hanscom's customers. As our Supreme Court has stated: "Where goods are sold with a warranty to a dealer it must be assumed that the dealer may resell them with a similar warranty to a subpurchaser. Accordingly if this is done and the subpurchaser recovers damages from the original buyer, the latter has a prima facie right to recover these damages against the seller who originally sold him the goods." *Elliott-Lewis Corp. v. York-Shipley, Inc.,* 372 Pa. 346, 350 (1953), quoting *Wolstenholme, Inc. v. Jos. Randall & Bro.,* 295 Pa. 131, 136 (1929). See also 5 Corbin on Contracts § 1015 (1951). Hence, a buyer for resale may recover damages arising from suits by his customers: *Farrey's, Inc. v. Supplee-Biddle Hardware Co.,* 103 F. Supp. 488 (E.D. Pa. 1952).

It is not unusual for liability to move transactionally up the chain of distribution until the manufacturer ultimately pays for its breach of its implied warranty of merchantability to the distributor to whom it initially sold the goods. Indeed, it is ironic that such a situa-

---

[4] 9 Ex. 341, 156 Eng. Rep. 145 (1854). See J. Summers & R. White, Uniform Commercial Code 324 (1972).

tion created confusion among the parties and the lower court in the instant case since, prior to the removal of the problems concerning the requirement of "vertical"[5] and "horizontal"[6] privity, this was precisely how everyone assumed the causes of action would develop. As Professor Nordstrom has noted, unless the vertical privity requirement were eliminated, "the injured party would be limited to an action against a retailer who would have to proceed up the distributive chain for reimbursement. Not only might the need for 'vertical privity' produce multiple lawsuits, but it could also cause difficulties if one of the sellers in the vertical chain of privity turned out to be insolvent."[7] Although the elimination of the privity requirements has made such a procedure unnecessary, it has not made it improper. Ponnock & Sons may recover the $20,000 from the manufacturer of the toy because of the manufacturer's breach of warranty if they are found liable after a new trial. If the manufacturer is beyond the feasible reach of process or is judgment proof, those are the risks Ponnock & Sons assumed when they chose to do business with that manufacturer.[8]

[5] The vertical privity requirement was abolished in Pennsylvania in *Kassab v. Central Soya*, 432 Pa. 217 (1968).

[6] The horizontal privity requirement was recently abolished in Pennsylvania in *Salvador v. I. H. English, Inc.*, 457 Pa. 24 (1974); same case, 224 Pa. Superior Ct. 377 (1973).

[7] R. Nordstrom, Law of Sales 283 (1970).

[8] There is no need to discuss problems concerning the "tacit agreement test" for determining the propriety of allowing consequential damages. See *Keystone Diesel Engine Co., Inc. v. Irwin*, 411 Pa. 222 (1963); *Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540 (1903). In the instant case, that problem was neither briefed nor argued by the parties. In any event, on the facts of this case the interposition of the tacit agreement test, which is explicitly rejected by the Uniform Commercial Code (U.C.C. § 2-715 (2), Comment 2), would not lead us to a different result.

Judgment of the lower court is reversed and the case is remanded for a new trial.

WATKINS, P. J., and VAN DER VOORT, J., dissent.