612 P.2d 1318

Ramon N. RAEL, Individually and as Father and Next Friend of Everett Rael, a Minor, Plaintiff-Appellee,

v.

F & S COMPANY, INC., a/k/a Flaming Arrow Fireworks Company, a New Mexico Corporation, Defendant-Appellant,

v.

ONDA ENTERPRISES, LTD., Defendant-Appellee.

No. 3486.

Court of Appeals of New Mexico.

Oct. 11, 1979.

Rehearing Denied Oct. 24, 1979.

Writ of Certiorari Quashed May 22, 1980.

John J. Carmody, Jr., Kanter & Carmody, Albuquerque, for defendant-appellant.

Joseph Warner, III, and Charles G. Berry, Marchiondo & Berry, Albuquerque, for defendant-appellees.

## OPINION

ANDREWS, Judge.

Twelve year old Everett Rael was injured by a sudden explosion of a firework. His father filed this action against the fireworks supplier, Onda Enterprises, Ltd. (Onda), and the seller, F & S Company, Inc. (F & S). After the court dismissed cross-

claims filed by both defendants in which each sought indemnity from the other, the jury returned a verdict for $7,000 for Everett and $339 for his father against both defendants jointly and severally. On appeal, F & S attacks the judgment on two unrelated grounds; first, it seeks indemnity from Onda, and second, it asserts that the court erred in granting an instruction permitting the award of damages for future pain and suffering. We have considered the facts and law applicable to the first issue and find it to be without merit. However, in our opinion, the court erred in granting an instruction permitting the award of damages for future pain and suffering because there was no evidence for such an award.

The firework which caused the injury was purchased from F & S, but had been manufactured by Gou Chien Fireworks Mfg. Co., Ltd., a Taiwan entity on which service was never effectuated, sold by Gou Chien to Onda, a Japanese corporation, and then sold to F & S, a New Mexico corporation.

In 1973, F & S did some testing of the fireworks received and found some of them to be defective. It then registered a complaint with Onda, which agreed to give F & S full credit, including freight and duties, for the defective batches and asked that the remainder of the batches be destroyed at Onda's expense. F & S agreed, and was given full credit for the batches about which it had complained. However, in July 1974, after taking some steps to remove the defective items from distribution, F & S sold the firework which injured Everett.

*Indemnity*

F & S argues that Onda, as supplier of the defective firework to F & S, is liable for all damages caused by the defective product, including the damages for which F & S was held liable to the plaintiff. While a rule has been adopted in some jurisdictions which allows indemnity in products liability

cases,[1] it is not necessary for us to decide whether New Mexico should follow these authorities; F & S failed to present evidence which would support its cross-claim for indemnity.

The plaintiff's case was submitted to the jury on two theories, negligence and strict liability. F & S's cross-claim alleges only products liability as a basis of indemnity, but even if both theories had been properly alleged, neither theory is supported by the facts as presented at trial.

■ F & S cannot maintain an indemnity action against Onda on a negligence theory because, even if Onda was negligent, F & S was in pari delicto with Onda. In New Mexico, one tortfeasor may not recover indemnity from another when the two are in pari delicto. *Rio Grande Gas Company v. Stahmann Farms, Inc.*, 80 N.M. 432, 457 P.2d 364 (1969); *Lomorri v. Milner Hotels*, 63 N.M. 342, 319 P.2d 949 (1957); *Morris v. Uhl & Lopez Engineers, Inc.*, 442 F.2d 1247 (10th Cir. 1971), aff'd *after remand*, 468 F.2d 58 (10th Cir. 1972).

As stated in *Morris v. Uhl & Lopez Engineers, Inc., supra* :

The nature and scope of the right are solely a matter of the legal kind or class of negligence which has been involved in relation to the accident. Also, while it is possible for differences to exist in the volume or extent of negligence of the same kind between members of a particular class, this is of no relevance, since this would be a question only in relation to contribution and not to indemnity. Members of a class occupy the same legal position with respect to each other, or in other words are in pari delicto between themselves. 442 F.2d 1247 at 1254.

This is the same as saying that one party may not recover from the other where both are active tortfeasors. *See Krametbauer v. McDonald*, 44 N.M. 473, 104 P.2d 900 (1940). F & S's conduct was active despite the fact

---

1. *See, e. g., Suvada v. White Motor Company,* 32 Ill.2d 612, 210 N.E.2d 182 (1965); *Di-Gregorio v. Champlain Valley Fruit Co.,* 127 Vt. 562, 255 A.2d 183 (1969); *Liberty Mut. Ins. Co. v. Williams Machine & Tool Co.,* 62 Ill.2d 77, 338 N.E. 857 (1975); *Texaco, Inc. v. McGrew Lumber Company,* 117 Ill.App.2d 351, 254 N.E.2d 584 (1969); *Kelly v. Hanscom Brothers, Inc.,* 231 Pa.Super. 357, 331 A.2d 737 (1974).

that its negligence arose mainly out of its failure to take remedial action to prevent the fireworks from getting into the hands of the public, and whether or not Onda's conduct was also actively negligent, a fact we need not decide here, F & S had no right of indemnity from Onda.

■ Switching to its products liability theory, F & S argues that responsibility should trace back to the originally responsible party since the manufacturer should not be able to escape liability merely because the injured party fortuitously selected the immediate seller as a defendant. We disagree. The same considerations of "active" and "passive" conduct discussed in regard to negligence pertain to a claim for indemnity based upon a products liability theory.

■ F & S asserts that this case is analogous to that in which an employer who is found liable to an injured person has a right to indemnity from his employee who negligently caused the injury, the employer's conduct being "passive" and the employee's being "active". This is an oversimplification. An employer has a right to indemnity solely because of his employee's negligence. But in most products situations where indemnity is allowed, the indemnitee's liability to the injured party is not based solely on the indemnitor's conduct. 3A Frumer & Friedman, Products Liability (1978) § 44.02[1]. A retailer is not "secondarily" liable because he is a retailer—he is secondarily liable if his conduct was passive and that of his supplier was active; if the conduct of both was active then the liability of both is primary and indemnity is not allowed. *See Oregon Farm Bureau Insurance Company v. E. L. Caldwell & Sons, Inc.*, 306 F.Supp. 835 (D.Or.1969); 3A Frumer & Friedman, Products Liability (1978) § 44.02[3][b]. Thus, it is not one's place in the chain of supply which allows him a right to indemnity; rather it is his conduct in relation to the conduct of others in the chain which allows or disallows him the right to indemnity. *See Wallner v. Kitchens of Sara Lee, Inc.*, 419 F.2d 1028 (7th Cir. 1969); *Caruloff v. Emerson Radio & Phonograph Corporation*, 445 F.2d 873 (2d Cir. 1971). As stated above, F & S was an active tortfeasor, and as such is precluded from recovering indemnity from Onda.

We have considered other arguments presented by F & S in regard to this issue and find them similarly unpersuasive.

*Future Pain and Suffering*

■ Next, F & S argues that the trial court erred in granting an instruction which permitted the award of damages for future pain and suffering. While it is clear that under New Mexico law damages can be recovered for mental pain and suffering as a consequence of physical injuries, *Rutledge v. Johnson*, 81 N.M. 217, 465 P.2d 274 (1970), F & S asserts that there was no evidence that any future pain and suffering would exist, nor was there any evidence as to the extent or duration of the future pain and suffering. Thus, whether or not the evidence supports the use of U.J.I. 14.5, is the question presented here. That instruction provides:

Damages: Pain and suffering, past and future.

The pain and suffering experienced [and *reasonably certain* to be experienced in the future] as a result of the injury.

The guide for you to follow in determining compensation for pain and suffering, if any, is the enlightened conscience of impartial jurors acting under the sanctity of your oath to compensate the plaintiffs with fairness to all parties to the action. [Emphasis added.]

As summarized by plaintiff from the evidence presented at trial, it is quite apparent that the plaintiff had a permanent scar on his eye, that he had powder particles buried underneath the surface of his cornea, that it is necessary that he have regular checkups because of the increased risk of infection, and that there is a possibility of infection occurring as much as ten or fifteen years in the future; and that prior to this accident his eyes were essentially healthy except for a slight nearsightedness, whereas at the time of trial he had permanent scars over the cornea of his eyes and his uncorrected visual acuity in each eye was 20–50 or 20–60. It is also clear that he had suffered headaches periodically since the time of the

accident and was continuing to suffer them up until the time of trial. However, neither this evidence, nor the assertion, without proof, that Everett had become "extremely frightened" of fireworks is sufficient to establish that future pain and suffering would exist as a result of this accident.

Damages based on surmise, conjecture or speculation cannot be sustained. Damages must be proved with reasonable certainty. *Hebenstreit v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 N.M. 301, 336 P.2d 1057 (1959); *Winder v. Martinez*, 88 N.M. 622, 545 P.2d 88 (Ct.App.), *cert. denied* 89 N.M. 6, 546 P.2d 71 (1976). There is no exception to the above rule for future damages. The ultimate fact which the plaintiff has the burden of proving is future damages reasonably certain to occur as a result of the original injury. *Carpenter v. Nelson*, 257 Minn. 424, 101 N.W.2d 918 (1960); 22 Am. Jur.2d, *Damages* § 106 (1965).

The trial in this case took place approximately three and one-half years after the accident. The only evidence presented as to pain in plaintiff's eye was that he suffered for a period of less than two months following the accident. His mother testified that he was no longer suffering at the time of trial. In addition, there was no testimony by an expert, or anyone else, that pain in his eyes would recur in the future. The only pain complained of after September, 1974, was that Everett had intermittent headaches. But the headaches could not properly form the basis for an instruction on future damages for two reasons: first, there is no evidence that the headaches were causally connected to the accident; second, there was no evidence that they were reasonably certain to occur in the future.

■ Plaintiff finally argues that where there has been a permanent injury, such as the permanent scarring in this case, pain and suffering will be presumed. While this Court has stated that where physical injuries are pled, it is generally agreed that mental anguish will result, *Jones v. Pollock*,

72 N.M. 315, 383 P.2d 271 (1963), such a rule is inapplicable to support the proposition claimed by plaintiff. No presumption of future pain and suffering is recognized in New Mexico.

The Supreme Court of South Dakota, in *Klein v. W. Hodgman and Sons, Inc.*, 77 S.D. 64, 85 N.W.2d 289 (1957), adopted the following two-pronged approach for proof of future pain and suffering:[2]

There are two rules by which the question of future pain and suffering may be submitted to the jury: If the injury is objective, and it is plainly apparent, from the very nature of the injury, that the injured person must of necessity undergo pain and suffering in the future then most certainly the Plaintiff would not be required to prove a fact so plainly evident, and upon making proof of such an objective injury, the jury may infer pain and suffering in the future. * * * Where the injury is subjective, and of such a nature that laymen cannot, with reasonable certainty know whether or not there will be future pain and suffering, then, in order to warrant an instruction on that point, and to authorize the jury to return a verdict for future pain and suffering, there must be offered evidence by expert witnesses, learned in human anatomy, who can testify, either from a personal examination or knowledge of the history of the case, or from a hypothetical question based on the facts, that the plaintiff, with reasonable certainty, may be expected to experience future pain and suffering, as a result of the injury proved. *Supra*, page 293.

We find such reasoning to be persuasive. In the instant case, the only conceivable inference of ongoing pain suffered by Everett was his claim of headaches in the back of his head. By the above standard, this would be characterized a "subjective" complaint of the plaintiff. It certainly cannot be deemed to be a matter of common knowledge that one who suffers an eye

---

**2.** Other jurisdictions adopting this rule are Hawaii in *Franco v. Fujimoto*, 47 Haw. 408, 390 P.2d 740 (1964), and Ohio in *Brush v. Eastern*

*Motor Dispatch*, 61 Ohio Abs. 219, 104 N.E.2d 700 (Ohio App.1950).

injury will also suffer headaches in the back of his head. Therefore, to justify an instruction for future pain and suffering it was necessary for the plaintiff to present evidence by a medical expert that these headaches were caused by the accident and that they would continue into the future, and for the expert to present some reasonably certain proof as to the severity and duration with which they would occur. No such testimony was presented. The record is clear that the trial court, over the objection of F & S, instructed the jury that they could award damages for future pain and suffering. This instruction is reversible error since there was no evidence to support it.

Since it is impossible to look behind the general verdict of the jury to determine how much, if any, of the award was intended to be compensation for future pain and suffering, the case is reversed and remanded for a new trial on the issue of damages alone.

IT IS SO ORDERED.

LOPEZ, J., concurs.

SUTIN, J., concurs in part and dissents in part.

SUTIN, Judge (concurring in part and dissenting in part).

I concur in part and dissent in part.

I concur with the view that F & S is not entitled to indemnification from Onda for all damages F & S is required to pay plaintiff. I dissent on the issue of future pain and suffering. This appeal should be affirmed.

*Facts*

A firecracker exploded in the face of Everett Rael, 12 years of age. He had burns to his face with black deposits on both corneas. (A cornea is the front part of the eye—the transparent part of the coat of the eyeball that covers the iris and pupil and admits light to the interior). *An ophthalmologist testified that the scars under the corneas were permanent.* Based upon a reasonable medical probability, *the particles in the eyes increased the risk of infection in the future, and that there was*

*nothing that could be done to prevent future infections.* Patients with this injury have had recurring problems after 10 or 15 years. For four years after the blast in his face and to the time of trial, Everett suffered pain at times in the back of his head like a headache.

At the time of the blast, Everett was hospitalized because this type of injury is very painful and needs to be watched very carefully.

Everett testified that he was worried that he might be permanently blinded as a result of the accident; that his headaches occurred from time to time while working at his father's store. When a headache occurred, he would lie down on the couch and close the curtains to rest a little because of the pain.

A.  *That part of the instruction relating to pain and suffering was erroneously unfavorable to plaintiff.*

Instruction No. 23 [U.J.I. 14.2, 14.5] reads as follows:

If you should decide in favor of the plaintiff, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the Plaintiff * * *.

The nature, extent and duration of the injury.

The pain and suffering experienced *and reasonably certain to be experienced in the future* as a result of the injury.

The guide for you to follow in determining compensation for pain and suffering, *if any, is the enlightened conscience of impartial jurors acting under the sanctity of your oath to compensate the plaintiffs with fairness to all parties to this action.*

*Whether any of these elements of damages have been proved by the evidence is for you to determine.* Your verdict must be based upon proof and not upon speculation, guess or conjecture. [Emphasis added.]

* * * * * *

The portion of the instruction that is erroneous reads: "and *reasonably certain* to be experienced in the future." *Carpenter v. Nelson*, 257 Minn. 424, 101 N.W.2d 918 (1960), cited in the majority opinion and in *Morris v. Rogers*, 80 N.M. 389, 456 P.2d 863 (1969). *Carpenter* says that the foregoing language describes the "degree of proof" rather than the fact to be proved; that it places upon plaintiff a higher degree of proof than a preponderance of the evidence. "Such an imposition is clearly prejudicial." [id. 922.] Compare, *Downer v. Southern Union Gas Co.*, 53 N.M. 354, 208 P.2d 815 (1949).

In the instant case, the court gave U.J.I. 3.6 on "Preponderance of Evidence." To me, U.J.I. 14.5 should read:

The pain and suffering experienced and to be experienced in the future if you believe that such damages are reasonably certain to occur as a result of the injury.

Plaintiffs did not object to the instruction and are bound thereby. However, this point is made as a guideline in the future whenever the issue of future pain and suffering arises.

B. *U.J.I. 14.2 commands the jury to determine whether items of damages have been proved.*

After all the proper elements are set forth, the instruction reads:

Whether any of these elements of damages have been proved by the evidence *is for you to determine.* [Emphasis added.]

This language commands the jury, not the courts, to determine whether plaintiff has proven "any of these elements of damage" by the evidence. If, in the opinion of the jury, the two elements in the instruction have been proven, the jury shall fix the amount of compensation to be paid. If any elements have not been proven, the jury must disregard payment of compensation for them. It is impossible to ascertain from the verdict whether damages for *future* pain and suffering were awarded plaintiff, or whether the verdict awarded plaintiff damages for *past* pain and suffering only.

Where such uncertainty exists, absent express findings by a jury, it is not the duty of the appellate court to set aside a verdict on the amount of damages if the verdict is supported by substantial evidence, unless the losing party can show actual detriment lost or that the verdict was excessive.

C. *The verdict of $7,000 damages is supported by substantial evidence absent any damages for future pain and suffering.*

The meaning of "pain and suffering" and the rules of law applicable thereto are matters of first impression.

Perhaps one of the most nebulous yet oft-employed concepts in modern law is that of "pain and suffering." Consequently, it is rather remarkable to note that one will search in vain for any extensive judicial analysis of its essential components. While most courts, like our own, recognize that pain and suffering constitute a legitimate element of damages in certain cases, they are seemingly unanimous in silently adhering to the view that the concept is a self-evident one, neither requiring, nor capable of, precise definition or analysis. [p. 93]

[T]he courts apparently seek to compensate the individual for any unwarranted invasion of, or interference with, his ordinary, peaceful mental process and pursuits. Pain and suffering are, after all, but two sides of the same coin. *Pain, as such, arises from some direct injury to the body which jangles the nerves into transmitting coded signals to the brain, stimulating it into an awareness of consciousness of serious bodily hurt. Mental suffering, on the other hand, seemingly refers to the individual's worry or apprehension concerning the extent of the injury—for example, the fear of resulting death. Mental suffering would also appear broad enough to include anxiety, shock, fright, humiliation, and other forms of emotional disturbance and mental distress whether or not accompanied by direct physical injury.* Both pain and suffering, then, can be resolved in terms of abnormal, unpleasant mental reactions. * * * [pps. 93–94]

\* \* \* \* \* \*

**514**

\* \* \* Pain and suffering are mental processes which obviously cannot be seen, heard, weighed, or measured. Proving their existence in a particular case is essentially a question of proving other facts from which the trier may logically conclude that they do in fact exist in the case before him. \* \* \* [p. 95]

\* \* \* \* \* \*

[S]uch damages are incapable of any exact mathematical computation, and that the amount to be awarded is peculiarly within the discretion of the trier. *The only standard or guide, so-called, which the trier may use in the assessment of damages is his own common sense* —that is, whatever he reasonably determines is fair compensation. \* \* \* *The only time the decision as to damages will be reversed is when the appellate court finds that the award is grossly divergent from what it deems to be fair compensation.* \* \* \* [T]he appeal court employs the self-same "standard" or "guide" utilized by the trial court— *that of common sense.* \* \* \* "[T]he only trouble with common-sense is that it is none too common." Be that as it may, it does seem rather harsh, nonetheless, to criticize jurors expressly or implicitly, for mis-using rules and tools which were never given to them. [pps. 97–98] [All Emphasis added.] McLoughlin, *Pain and Suffering Under Connecticut Law*, 33 Conn.Bar.J. 93 (1959).

The McLoughlin definition and analysis is supported by and added to by analysis in *Herb v. Hollowell*, 304 Pa. 128, 154 A. 582, 584–5 (1931) in which the court said:

The nature of pain and suffering is such that no legal yardstick can be fashioned to measure accurately reasonable compensation for it. *No one can measure another's pain and suffering; only the person suffering knows how much he is suffering,* and even he could not accurately say what would be reasonable pecuniary compensation for it. Earning power and dollars are interchangeable; suffering and dollars are not. *Two persons apparently suffering the same pain from the same kind of injury might in fact be suffering respectively pains dif-*

*fering much in acuteness, depending on the nervous sensibility of the sufferer.* Two persons suffering exactly the same pain would doubtless differ as to what reasonable compensation for that pain would be. *This being true, it follows that jurors would probably differ widely as to what is reasonable compensation for another's pain and suffering, no matter how specific the court's instructions might be.* All this is merely suggestive of the practical difficulties confronting a trial judge who is about to instruct the jury as to the measure of damages for pain and suffering. *It is, of course, the duty of the trial judge to make it clear to the jury that, in awarding damages for pain and suffering, the award must be limited "to compensation and compensation alone."* \* \* Jurors may differ widely in their conception of the word "compensation." *One juror might hold that no amount of money could justly compensate one for acute pain and suffering; another might hold that even a small sum of money would be just compensation in such a case. . .*

\* \* \* \* \* \*

In the case before us, the trial judge said: "There is no fixed standard as to any amount to allow for pain and suffering. That is to be guided by your judgment." This was in effect an instruction that there was no infallible objective standard with which to measure damages for these subjective elements *but that they were to use good common sense in assessing damages for them.* \* \* \* [Emphasis added.]

Zelermyer, *Damages for Pain and Suffering*, 6 Syracuse L.Rev. 27, 31 (1954) says:
\* \* \* But its only guide-posts in its task of assessing damages for these matters are *common sense and sound judgment.* [Emphasis added.]

In New Mexico, the measure of damages "is the enlightened conscience of impartial jurors." *Braddock v. Seaboard Air Line Railroad Company*, 80 So.2d 662 (Fla.1955). This guide is the equivalent of "common sense and good judgment." Pain and suf-

fering has no market price. Even the most experienced and learned physician finds no method of measuring it.

As a result, a verdict of the jury will not be disturbed unless it appears that it was influenced by partiality, prejudice, corruption of the jury, shocking in amount, or by some mistaken view of the evidence.

From the foregoing discussion, the following rules are applicable to compensation for "pain and suffering."

1. "Pain and suffering" as defined constitute legitimate elements of damages.

2. Proof of "pain and suffering" must flow from other facts such as physical and mental injury.

3. Such damages are incapable of any *exact* mathematical compensation such as loss of earnings or damage to property. No legal yardstick can be fashioned to *accurately* measure reasonable compensation. (Conflict of authority exists on permitting attorneys to argue a per hour or per diem measure of damages. It is not the purpose of this rule to adopt or reject that concept.)

4. The amount of compensation to be paid rests within the "common sense" or "the enlightened conscience of impartial jurors * * * to compensate the plaintiffs with fairness to all parties to this action."

5. An appellate court must also exercise "common sense."

In the instant case, the jury awarded Everett $7,000 in damages for "the nature, extent and duration of the injury," and for "the pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury."

Everett suffered forms of emotional disturbance and mental stress when a firecracker exploded in his face. Shock, fright, anxiety and trauma followed. He worried that he might be permanently blind. For four years thereafter, from time to time, up to the date of trial, he suffered headaches. We cannot, by the exercise of "common sense" say that the verdict was not the result of "the enlightened conscience of impartial jurors."

Absent damages for future pain and suffering, the verdict in the sum of $7,000 was supported in the evidence.

D. *Damages for future pain and suffering is supported by the evidence.*

Recovery may be had for future pain and suffering if the evidence shows that it is "reasonably certain to be experienced in the future as a result of the injury." "Confusion understandably arises because the fact to be proved is, in itself, a matter of *probability*, although different and of a higher degree than the *probability* of evidence required to prove the fact." [Emphasis added.] *Carpenter, supra* [101 N.W.2d at 921].

A reasonable probability is implied where physical pain and mental suffering continue from the date of the injury to the time of trial. Mental suffering will also be implied from injuries accompanied by physical pain. The intensity of the suffering, whether great or slight, and the duration thereof are to be considered by the jury from all the evidence in reaching the amount of compensation. *Bitzan v. Parisi*, 88 Wash.2d 116, 558 P.2d 775 (1977); *Coca Cola Bottling Co. of Fort Worth v. McAlister*, 256 S.W.2d 654 (Tex.Civ.App.1953); *General Motors Acceptance Corp. v. Layton*, 353 So.2d 749 (Miss.1978); *Moses v. Proctor Coal Co.*, 166 Ky. 805, 179 S.W. 1043 (1915); *Worez v. Des Moines City Ry. Co.*, 175 Iowa 1, 156 N.W. 867 (1916); *Trani v. Anchor Hocking Glass Corporation*, 142 Conn. 541, 116 A.2d 167 (1955) (four years after occurrence); *Sherman v. Frank*, 63 Cal.App.2d 278, 146 P.2d 704 (1944) (expert proof not essential).

"We are thus brought to the case where proof of the basis for the jury's prediction of future pain and suffering must rest upon plaintiff's uncorroborated testimony as to subjective symptoms. Should a recovery be permitted on that basis? The answer of the courts seems to be in the affirmative. A number of recent decisions support this conclusion." Plant, *Damages for Pain and Suffering*, 19 Ohio St.L.J. 200, 204 (1958) and *Layton, supra.*

The question whether medical testimony is necessary in order to warrant a recovery

for future pain and suffering in a personal injury action differs in some jurisdictions. *See*, Annot. *Sufficiency of Evidence*, etc., 18 A.L.R.3d 10, 22 (1968). This additional burden should not be imposed on a plaintiff in New Mexico where the determination of future pain and suffering rests with the jury. The test of this important problem is based on the credibility of the witness. This factor, the truth or falsity of the testimony, is ascertainable by a jury. Expert medical testimony is not essential in every case. Damage decisions are so peculiarly subject to the facts of each case as to be at best illustrative rather than decisive. *Brown v. Kaminski*, 277 Minn. 131, 152 N.W.2d 79 (1967); *Bitzan, supra.*

In the instant case, there was expert testimony. An opthamologist testified that the scars under the corneal surface were *permanent*; that 10 to 15 years later, patients with this injury are subject to recurrences of pain and suffering; and that particles in the eyes increased the risk of infection in the future. Everett testified that his headaches continued to the time of trial. This was sufficient evidence to support an award of damages for future pain and suffering.

Defendant makes no contention that the verdict was excessive or that it suffered a detriment.

The majority opinion quotes at length from *Klein v. W. Hodgman & Sons, Inc.*, 77 S.D. 64, 85 N.W.2d 289 (1957). This quotation was taken from *Shawnee-Techumseh Traction Co. v. Griggs*, 50 Okl. 566, 151 P. 230, 231 (1915). It should be noted that the court spoke in terms of "objective injury" and "subjective injury" with reference to future pain and suffering. Even though plaintiff suffered a fractured jaw which had healed and knitted together at the time of trial, the court said the injuries were subjective as far as they related to future pain and suffering. The basis of the opinion was:

> \* \* \* In the case at bar, the main expert witness produced by the plaintiff, who knew the complete history of the case from personal knowledge, said that *he did not know whether plaintiff's inju-ries were permanent or not.* \* \* \* [Emphasis added.] [151 P. at 232].

Compare, *Koenig v. Weber*, 84 S.D. 558, 174 N.W.2d 218 (1970) where a six year old child suffered permanent scarring of the face and hand.

In *Franco v. Fujimoto*, 47 Haw. 408, 390 P.2d 740 (1964) cited in the majority opinion, the court said:

> In the trial plaintiff testified she was still suffering pain from the injuries in the shoulder and neck. The only abnormality of an *objective nature* which the plaintiff had at the time of the trial was *the scar*. All other complaints were purely *subjective*. No medical testimony was offered to substantiate *the permanency* of the injuries to plaintiff's shoulder and neck. Under the circumstances the jury could not properly consider prospective bodily suffering as an element of damages. . . . [Emphasis added.] [390 P.2d at 754].

*Brush v. Eastern Motor Dispatch*, 61 Ohio Abs. 219, 104 N.E.2d 700 (Ohio App.1950), held that it was reasonable to conclude that headaches and aches from a permanent injury to the knee could be said to be such suffering as naturally flowed from the injury for some time in the future. But the court said:

> \* \* \* The difficulty respecting both of these elements of damage is that the jury had no means of determining how long in the future, less than permanently, the plaintiff would suffer from them. \* \* \* [104 N.E.2d at 703.]

This rule destroys recovery for future pain and suffering because any lay person or learned and experienced physician would have to speculate as to the time sequence. This fact has proven true in every case following *Brush* unless the injury is of an objective nature such as the loss of an arm, leg or other member. *Powell v. Montgomery*, 27 Ohio App.2d 112, 272 N.E.2d 906 (1971). To say that a party shall not receive damages for pain and suffering that naturally flows from a permanent injury is to say that "pain with a thousand teeth" is valueless; that pain, suffering, distress,

hurt, discomfort, agony or misery for a short or long period of time is not compensable even though caused by the negligence of another and that "the enlightened conscience of impartial jurors" is incapable of evaluating such pain and suffering. This rule is obnoxious to the tenor of the law in New Mexico.

Defendant also relies on *Diemel v. Weirich,* 264 Wis. 265, 58 N.W.2d 651 (1953) where no medical witnesses testified at all in behalf of plaintiff. In *Coryell v. Conn,* 88 Wis.2d 310, 276 N.W.2d 723 (1979) where a physician modified his original opinion in regard to the knee injury of plaintiff and testified that her complaints were now more limited than previously and that they had localized in her right knee, the one injured in the accident, the court said:

The jury was entitled to believe the testimony of the attending physician and attribute present *and future pain* in the right knee to this accident. The jury could reasonably conclude there was some permanency rather than a continuing temporary disability attributed to the injury sustained in the accident. While the award of damages is perhaps high [$15,-000] we are not persuaded that it was excessive. [id. 727]

In adopting a rule that allows recovery for "future pain and suffering," New Mexico should not follow the amorphous language used by courts. We should not speak in terms of "objective and subjective" nature of the injury, "medical expert testimony is essential," "lay persons are incompetent to testify," "some permanency" vs. "continuing temporary" disability, "jurors should not be allowed to speculate," "reasonable certainty" or "probable certainty." These are conundrums used to reach a conclusion; language that can be interpreted according to the mood of the court. Whether "future pain and suffering" constitute an item of damage should be left to "the enlightened conscience of impartial jurors," and if determined to be an item of damage, the amount thereof, whether of short or long or permanent duration. "Pain and suffering" is a mental disturbance. Whether it will affect an injured person in the future depends upon the strength or weakness of the nervous system. Some may suffer hallucinations, other may not suffer at all. The jury listens to all testimony, expert or lay, or both, observes the injured person, his conduct on the witness stand, his performance under direct and cross-examination and the nuances that flow therefrom. Its judgment, not that of the trial or appellate court is controlling unless the determination made is shocking. By use of this formula, we shall not be burdened with conflicting opinions, borderline cases or differences of opinion. It will meet the challenge of the vast increase in tort litigation.