DARRELL D. AND TONJA L. WENDT ET AL., APPELLANTS, V. BEARDMORE SUBURBAN CHEVROLET, INC., APPELLEE.

366 N.W.2d 424

Filed April 26, 1985.   No. 84-044.

David B. Latenser, for appellants.

Patrick W. Kennison of Kutak Rock & Huie, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This case arose out of a controversy concerning an automobile sold by the defendant, Beardmore Suburban Chevrolet, Inc., to the plaintiffs, Darrell D. and Tonja L. Wendt, husband and wife, and Dwayne L. Arehart.

The plaintiffs' amended petition, filed in the county court for Sarpy County, Nebraska, alleged that on or about May 27, 1982, plaintiffs purchased a 1981 Chevrolet Citation from the defendant for $6,475 in reliance on express oral statements by the defendant that the vehicle (1) was in new condition; (2) had been used only as a new car demonstrator; (3) had been neither damaged nor involved in a collision; (4) was under a new car warranty; (5) had been titled only in the name of a new car Chevrolet dealership or General Motors Acceptance Corporation and had not been otherwise titled out; (6) was qualified as a new car demonstrator for new car low interest financing, for which used cars did not qualify; and (7) was safe to drive. Plaintiffs further alleged that after delivery of the vehicle plaintiffs discovered that in May 1981 the title had been transferred to the Ashland-Greenwood Public Schools in Ashland, Nebraska; that the automobile had been used as a high school driver training vehicle; and that it had been rolled in an accident and, as a result, was seriously damaged. The petition also alleged that on June 7, 1982, plaintiffs notified defendant of the "true condition" of the vehicle and demanded return of the purchase price and that defendant refused to refund any portion of the purchase price or to accept return of the vehicle. The petition prayed for damages in the amount of

$4,445, the difference between the alleged value of the automobile and the contract price, and for other damages in the amount of $555.

After a trial to the court, the county court found against the plaintiffs on both theories of recovery and dismissed their petition. Upon appeal to the district court, the judgment was affirmed. The plaintiffs have now appealed to this court.

Although the plaintiffs' petition alleged a number of express warranties and prayed for damages, the plaintiffs insisted several times during the trial in the county court that the case was being tried solely on a theory of revocation of acceptance. Their brief filed in this court states that the action was for revocation of acceptance under Neb. U.C.C. § 2-608 (Reissue 1980) and that the district court erred in finding that the plaintiffs had waived their right of revocation.

Since this was an action at law, the finding by the trial court was the equivalent of a jury verdict and may not be set aside unless clearly wrong. *Miller Chemical Co., Inc. v. Tams,* 211 Neb. 837, 320 N.W.2d 759 (1982). The plaintiffs cannot succeed on this appeal unless the evidence compelled a finding in their favor as a matter of law.

The record shows that in April 1982 General Motors Acceptance Corporation (GMAC) repossessed a number of vehicles, including the car purchased by plaintiffs, from Gaebel Chevrolet, Inc., an automobile dealer in Ashland, Nebraska. When GMAC solicited bids for their resale, the used car sales manager for the defendant looked at some of the vehicles and purchased the 1981 Chevrolet Citation, the car in question here, for $5,451.

Although it is undisputed that the title to the car had been transferred to the Ashland-Greenwood Public Schools and that the car had been used as a high school driver training vehicle and involved in an accident, GMAC did not disclose those facts to the defendant. The defendant first became aware of those facts when informed of them by the plaintiffs after the sale.

The plaintiffs purchased the Citation from the defendant for $6,475. At that time the odometer showed a mileage of 3,901 miles. Prior to the purchase, the plaintiffs test-drove the vehicle and had it inspected by a mechanic. On one occasion Tonja

Wendt noticed some broken glass in the back seat of the car. When she "jokingly" asked one of the defendant's employees if the car had been wrecked, he replied that "to his knowledge he didn't think so." Instead, the salesman suggested that the broken glass might be from a pop bottle. On another occasion Darrell Wendt noted that there was an area on the car where the paint did not match, and the salesman conjectured that it could have been painted twice at the factory. It is not controverted that the defendant's salesmen referred to the car as a demonstrator.

The plaintiff Arehart, the father of Tonja Wendt, cosigned the plaintiffs Wendts' loan for the car. In order for him to read the necessary documents prior to signing them, the Wendts brought the documents to his residence in Kearney, Nebraska, over the 1982 Memorial Day weekend. The Wendts drove the Citation on this trip.

While using the car on a rainy day that weekend, Arehart noticed that the windshield leaked, and there were other problems leading him to suspect that the car had been wrecked.

Arehart testified that when he turned the first corner, water ran in around the upper right corner of the windshield. He then noticed there was an excessive "gap" between the post and windshield—close to an inch wide—that had been puttied in with sealer. Later, he noticed the truck lid alignment was off by a half to three-quarters of an inch on one side, and almost touching on the other. He then "suspicioned very highly that it had probably been in a pretty good wreck to get that much damage, especially on the front post and that much on the back." Nevertheless, Arehart and the Wendts signed the papers necessary for the purchase of the car. All such documents referred to the car as "used" and that it was being sold "as is."

Approximately 1 week after purchasing the car, plaintiffs learned of its use as a high school driver training vehicle and its having been wrecked. On June 7, 1982, the plaintiffs notified the defendant by letter that they were revoking acceptance of the car. The plaintiffs, however, retained possession of the automobile and continued to make monthly payments on the car.

Furthermore, Darrell Wendt testified that although they

borrowed a car in August and September, they drove the Citation for the remainder of time after the revocation of acceptance. At the time of trial they had driven the automobile 11,000 miles since it had been purchased.

In *Ford Motor Credit Co. v. Harper*, 671 F. 2d 1117, 1121-22 (8th Cir. 1982), the court of appeals held:

> Under the Code, once goods are accepted buyer is entitled to cancel the contract and recover so much as has been paid only upon establishing that he has justifiably revoked his acceptance. [Citation omitted.] The Code also provides that buyer may recover damages in a suit for breach of warranty in regard to accepted goods. [Citation omitted.] The two options are nonalternative in character and buyer may pursue either remedy or both. [Citation omitted.] They are, however, separate remedies treated in entirely different sections of the Code and they offer separate forms of relief.

Previously, *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 302 N.W.2d 655 (1981), considered the appeal of an action based on, among other things, both breach of warranty and revocation of acceptance.

Considering, first, the theory of revocation of acceptance, other jurisdictions have noted that a buyer's revocation of acceptance is subject to the provision that he "has the same rights and duties with regard to the goods involved as if he had rejected them." § 2-608(3). One of these duties is to not exercise ownership. Neb. U.C.C. § 2-602(2)(a) and (c) (Reissue 1980). "Apparently the test is one of reasonableness and is a question of fact." *Charney v. Ocean Pontiac, Inc.*, 17 U.C.C. Rep. Serv. (Callaghan) 982, 985 (N.D. Mass. App. Div. Sept. 3, 1975).

In *Charney* the question before the court was whether a plaintiff had exercised ownership rights over an automobile when she drove it from Massachusetts to her new residence in California. Citing numerous decisions holding that "continued use of an automobile is enough to defeat a buyer's revocation," *id.*, the court found that there was no special circumstance present in the case such that would warrant an exception to this general rule.

In *Waltz v. Chevrolet Motor Division*, 307 A.2d 815 (Del.

Super. 1973), the defendant argued that the buyer plaintiff could not simultaneously revoke acceptance of a car and continue to use it. The court reasoned: "Logically, then, the Code requires that Plaintiffs' continued use of the automobile after their attempted rejection invalidates the revocation of acceptance." *Id.* at 816. Without elaborating upon the facts of the case, the court concluded: "Accordingly, while a buyer may conditionally accept goods on the assumption that defects will be cured, § 2-607(2), he cannot revoke an acceptance after attempts to cure have failed while continuing to hold and enjoy the goods." *Id.* See, also, *Cardwell v. International Housing, Inc.*, 282 Pa. Super. 498, 423 A.2d 355 (1980), where, considering a buyer's use of a mobile home after revocation of acceptance, the court concluded:

When, however, appellees continued to live in the home and continued to make their monthly payments to appellant, they acted inconsistently with their claimed revocation and lulled appellant into a false belief that appellees would continue to retain and accept the home. . . . Thus, we believe that appellees failed to display the requisite good faith required in a commercial transaction and by these actions clearly indicated that they would continue to accept the mobile home despite their earlier revocation.

423 A.2d at 366.

The evidence in this case was clearly sufficient to support the finding that the use of the automobile by the plaintiffs waived any right of revocation of acceptance that they may have had.

With respect to a theory of warranty, the plaintiffs, during the trial, attempted to establish two different express warranties as having been made at the time of the purchase of the automobile: (1) That the automobile was a new car demonstrator; and (2) That it had not been wrecked.

Neb. U.C.C. § 2-313(1)(b) (Reissue 1980) provides: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Since an express warranty must have been "made part of the basis of the bargain," it is essential that the plaintiffs prove reliance upon the warranty. See,

*Scaringe v. Holstein*, 38 U.C.C. Rep. Serv. (Callaghan) 1595 (N.Y.A.D. July 5, 1984); *Royal Business Machines v. Lorraine Corp.*, 633 F.2d 34 (7th Cir. 1980); *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286 (6th Cir. 1982).

As to the alleged warranty that the automobile was a new car demonstrator, the plaintiffs presented no evidence concerning the value of the car as a former demonstrator as opposed to the value of a car which had been used as a former high school driver training vehicle.

Damages in a breach of warranty action are governed by Neb. U.C.C. § 2-714(2) (Reissue 1980), which provides: "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." See, e.g., *Alliance Tractor & Implement Co. v. Lukens Tool & Die Co.*, 199 Neb. 489, 260 N.W.2d 193 (1977).

Since there was no evidence as to difference in value between a new car which has been used as a demonstrator and an automobile used as a driver training vehicle, there was no evidence upon which an award could be based for breach of that warranty.

As to the alleged warranty that the automobile had not been wrecked, there was an issue of fact as to whether such a warranty had been made and, if made, whether there had been reliance upon it.

The evidence is that the defendant did not know the automobile had been damaged in an accident until after the plaintiffs had purchased the automobile.

When Tonja Wendt discovered broken glass in the back seat of the automobile and "jokingly" inquired as to the possibility that the automobile had been involved in an accident, the salesman responded only to the extent of his knowledge. In *England v. Leithoff*, 212 Neb. 462, 468, 323 N.W.2d 98, 101 (1982), this court stated:

> "One of the primary tests of whether a given representation is a warranty or a mere expression of opinion is whether the seller assumed to assert a fact of

which the buyer was ignorant or whether the seller merely expressed a judgment about a matter as to which each party could be expected to have an opinion." Annot., 94 A.L.R.3d 729, 730 (1979).

" 'It is the general rule of law that a warranty is express when the seller makes an affirmation with respect to the article to be sold, pending the agreement of sale, upon which it is intended that the buyer shall rely in making the purchase.' " *Naaf v. Griffitts*, 201 Kan. 64, 66, 439 P.2d 83, 85 (1968).

Here, the salesmen did nothing more than offer an opinion concerning the existence of broken glass in the car and the mismatched paint on the car. The trial court could find that the defendant did not warrant that the car had not been wrecked; rather, only that it did not know that it had been involved in one. Furthermore, in light of the plaintiffs' own mechanic's inspection of the car and plaintiff Arehart's suspicion that it had been "in a pretty good wreck," it cannot be said as a matter of law that such statements became the basis of the bargain.

The record does not show that the findings of the district court were clearly wrong. The judgment must, therefore, be affirmed.

AFFIRMED.