GEORGE W. WARNER III AND VIRGINIA C. WARNER, APPELLEES AND CROSS-APPELLEES, V. REAGAN BUICK, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE AND CROSS-APPELLANT, AND SUPERIOR BUICK PONTIAC GMC, INC., NOW KNOWN AS RHODEN MOTOR CENTER, THIRD-PARTY DEFENDANT, APPELLANT AND CROSS-APPELLEE.

483 N.W.2d 764

Filed May 15, 1992.   No. S-89-1189.

Victor J. Lich, Jr., of Lich, Herold, & Mackiewicz, for appellant.

Joseph F. Daly and P. Shawn McCann, of Sodoro, Daly & Sodoro, for appellee Reagan Buick.

Michael F. Pistillo, of Steier & Kreikemeier, P.C., for appellees Warner.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an action by the purchasers of a used automobile,

George W. Warner III and Virginia C. Warner (the Warners), to recover damages from the dealer-seller, Reagan Buick, Inc. (Reagan), for breach of contract, breach of express and implied warranties, and violation of the Nebraska Uniform Deceptive Trade Practices Act. Reagan filed a third-party action against the seller from which it had purchased the automobile, Superior Buick Pontiac GMC, Inc. (Superior), in which Reagan alleged that any damages which the Warners might recover against Reagan should be imposed against Superior in favor of Reagan.

The trial court rendered judgment in favor of the Warners, against Reagan, in the amount of $7,734 and in favor of Reagan on its third-party complaint against Superior in the amount of $3,867, or one-half the amount awarded the Warners. In addition, Reagan and Superior were each assessed an attorney fee of $1,000 in favor of the Warners. Superior appeals and Reagan cross-appeals.

Superior's assignments of error are summarized as follows: The trial court erred in (1) finding that Superior breached its contract with Reagan; (2) finding that Superior breached any express or implied warranties in its sale of the automobile to Reagan; (3) failing to find that Reagan waived its right to sue by not reasonably notifying Superior of the breach or revoking its acceptance within a reasonable time, as required by Neb. U.C.C. §§ 2-607 and 2-608 (Reissue 1980); (4) failing to sustain Superior's motion for summary judgment; and (5) failing to sustain Superior's motions to dismiss Reagan's third-party petition at the close of the Warners' case and at the conclusion of all the evidence.

Reagan, which is considered an appellee and a cross-appellant by virtue of Neb. Ct. R. of Prac. 1C (rev. 1989), directs its appeal against both the Warners and Superior. Against the Warners, Reagan asserts that the trial court erred in (1) finding that Reagan breached its contract with the Warners and that Reagan breached any express or implied warranties and (2) failing to sustain its motions to dismiss the Warners' petition at the close of the Warners' case and at the close of all the evidence. Against Superior, Reagan assigns as error the trial court's entry of judgment for only one-half of the damages assessed against Reagan in favor of the Warners.

We shall first discuss the errors assigned by Reagan in its cross-appeal against the Warners. When viewed most favorably to the prevailing party, the Warners, the facts material to the resolution of the case are as follows:

In early February 1986, the Warners began negotiating with a representative of Reagan to purchase the vehicle in question. Reagan's salesman represented that the automobile was a "one-owner" vehicle acquired through a trade-in. On February 5, the Warners executed a sales contract describing the vehicle as a 1983 Buick Riviera. The negotiated price was $12,647.17 and, including interest, credit life insurance, and a maintenance agreement, the total acquisition cost was $17,120.97. A paper prominently displayed in the window announced that the car was sold "as is," without any express or implied warranties.

Shortly after the Warners took possession of the car, several problems developed. The windows did not operate properly, and when they did operate, they caused the interior lights to go on. Also, the transmission did not function properly, and the vehicle leaked when left in the rain. Sometime in late March or early April 1986, the Warners requested that Reagan take the car back, but Reagan refused to do so. The Warners thereafter remained in possession of the vehicle, driving it daily up through the time of trial and, in the process, adding approximately 15,000 miles to the 26,761 miles already on the odometer at the time the Warners purchased the vehicle.

The Warners were not initially furnished with a title because it was held by General Motors Acceptance Corporation, the company which had financed the purchase. Upon investigating the vehicle's history, the Warners discovered that the car was originally sold by a dealer to a Michael Stevens of Illinois. The car was stolen from Stevens and subsequently stripped and burned. Stevens' insurer sold the burned-out frame to an auto parts store in Illinois, which rebuilt the automobile and sold it to Mitchell Used Cars of Greentop, Missouri. Mitchell in turn sold it to Martz Auto in Ottumwa, Iowa. Martz Auto apparently sold the car at auction to Superior. Superior then sold it to Reagan, who finally sold it to the Warners.

Several automobile appraisers, testifying as experts, stated that the car contained Buick Riviera parts from various model

years between 1978 and 1983 and possibly parts from other makes of cars as well. There was also testimony that the paint was thick in spots, indicating that the vehicle had been repainted. All the experts agreed that it would be evident to anyone experienced in the automobile business that the car was a 1983 Buick in name only. Each expert also testified that the value of the car was substantially lessened because of the amalgamation of parts used and the lack of skill evident in the attempted restoration. In this regard, they specifically noted that bundles of wires were not attached to anything and that the 1979 instrument panel installed lacked a turbo indicator, even though the 1983 model contained a turbo engine.

For its first assignment of error, Reagan argues that the evidence is insufficient as a matter of law to support a finding that Reagan breached its contract or any express or implied warranties. In our review of Reagan's cross-appeal against the Warners, we are governed by the rule that in a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly erroneous, but as to questions of law, we arrive at an independent conclusion. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

Neb. U.C.C. § 2-313 (Reissue 1980) provides:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific

intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

In all the documents of sale, financing, and repair, the automobile is described as a 1983 Buick Riviera. The overwhelming evidence that the car was in fact only the skeleton of a 1983 Buick Riviera and a mishmash of assorted parts is sufficient evidence of a breach of an express warranty. See *Crane v Wood Motors, Inc.*, 53 Mich. App. 17, 218 N.W.2d 420 (1974) (description of an aircraft as a 1969 model would create an express warranty that the plane was manufactured in 1969 and not 1968). The outright misrepresentations made by Reagan's salesmen regarding the history of the car strengthens our conclusion that Reagan breached an express warranty.

The measure of damages for breach of an express warranty is the difference between the value of the goods at acceptance and their value as warranted. Neb. U.C.C. § 2-714 (Reissue 1980); *Wendt v. Beardmore Suburban Chevrolet*, 219 Neb. 775, 366 N.W.2d 424 (1985). The automobile appraisers who testified at trial generally agreed that the value of the car at the time of acceptance was between $3,000 and $5,000. Assuming the actual purchase price represents the market value of the vehicle as warranted, we cannot say the trial court's award is clearly erroneous.

We note that no complaint is made of the award of attorney fees, pursuant to Neb. Rev. Stat. § 87-303 (Reissue 1987) of the Nebraska Uniform Deceptive Trade Practices Act. Because there is evidence tending to establish that the true nature of the car was known to Reagan, we will not disturb this award. As the judgment in favor of the Warners is sustainable on the theory of breach of an express warranty, a discussion of whether the contract itself or an implied warranty of merchantability was breached is not necessary. Because Reagan's second assignment of error is subsumed in its first argument, the judgment in favor of the Warners and against Reagan is affirmed.

We now turn to Superior's appeal from the trial court's entry of judgment in favor of Reagan on Reagan's third-party petition. Viewed in the light most favorable to Reagan, the facts

surrounding the sale of the vehicle by Superior to Reagan are as follows:

Superior purchased the vehicle on July 30, 1985, at a Des Moines, Iowa, auto auction. There is evidence that when an automobile is sold at such an auction, a red light is turned on over any car that has been salvaged and rebuilt.

Gary Runyan, a Reagan employee, purchased the car for Reagan on December 15, 1985. He testified that Superior's general manager told him the car was a single-owner vehicle taken in trade for a new car. Runyan purchased the car for $10,200, and the sale contract included a conspicuous provision stating that the car was sold "as is," with no warranties of merchantability or fitness for a particular purpose.

Runyan purchased four other vehicles for Reagan on the same day and admitted that he had not closely inspected the car ultimately sold to the Warners. He testified that it was common among Omaha automobile merchants to purchase vehicles for resale based upon the word of another dealer that the car was of the one-owner, trade-in variety. Several Reagan employees testified that it was Reagan's policy not to resell salvaged automobiles and that Reagan would not have purchased the car from Superior had it known the car's true history.

Though not assigned as error, Superior advances an argument in its brief, which Reagan "adopts" as part of its cross-appeal, regarding the validity of the Warners' claim against Reagan. Superior does so on the premise that "any failure of the Warners' case must cause Reagan's Third-Party Petition to fail . . . ." While this issue is not presented in conformity with the rules of this court, we will nevertheless address it.

Superior argues that the Warners' failure to effectively revoke acceptance of the vehicle and continued use thereof after Reagan rejected the tendered return of the car precludes their suit under the provisions of §§ 2-607 and 2-608. Superior is correct that the continued use of an automobile after discovery of defects substantially impairing its value may result in a waiver of the right to revoke acceptance. See *Wendt, supra.* However, it is well established in Nebraska that the right to revoke acceptance, cancel the contract, and recover any

amounts paid is a separate, independent, and alternative cause of action from one for breach of warranty with regard to accepted goods. *Wendt, supra,* citing *Ford Motor Credit Co. v. Harper,* 671 F.2d 1117 (8th Cir. 1982). The Warners brought this case under theories of breach of contract and express and implied warranties. Revocation of acceptance is not a prerequisite to such a suit, and thus Superior's argument is without merit.

Proceeding to matters assigned as error, Superior asserts that Reagan's failure to provide reasonable notice of the alleged breach or to revoke its acceptance within a reasonable period of time bars its third-party suit. Superior also argues that the evidence does not support a finding that it breached the contract or any express or implied warranties because the car was sold to Reagan "as is." Because these arguments turn on the assumption that Reagan's third-party suit is governed by the provisions of the Uniform Commercial Code, it is first necessary to address the nature of Reagan's third-party petition.

*City of Wood River v. Geer-Melkus Constr. Co.,* 233 Neb. 179, 444 N.W.2d 305 (1989), involved a third-party petition very similar to the one in this case. There, the city of Wood River filed an action for breach of contract against Geer-Melkus after a waste water treatment facility constructed by Geer-Melkus broke down. Geer-Melkus filed a third-party complaint against the supplier of certain components used in constructing the facility. The third-party petition alleged that if Geer-Melkus was found liable to Wood River, then the supplier was liable to Geer-Melkus in the same amount, based upon the supplier's breach of warranty.

On appeal from the trial court's dismissal of the third-party petition, pursuant to the statute of limitations contained in Neb. U.C.C. § 2-725 (Reissue 1980), this court addressed the nature of Geer-Melkus' suit. Though the petition did not include the word "indemnity," the court noted that it is the essential character of a cause of action as shown by the allegations of the complaint, and not the pleader's denomination, which determines the nature of an action. The court characterized the third-party complaint as one for

indemnification because Geer-Melkus' position was that if it suffered damages due to the supplier's failure to fulfill its contractual obligation, it would look to the supplier for payment of its loss. Because the third-party action was in essence one for indemnification, the court concluded that the provisions of § 2-725 did not bar the suit.

Here, Reagan's third-party petition likewise does not include the word "indemnity." Instead, after alleging that Superior breached the contract and express and implied warranties, the petition states that "if judgment is entered herein for [the Warners] and against [Reagan] that [Reagan] have and recover said judgment from [Superior] plus its costs herein expended." It is clear that if Reagan is found liable to the Warners, Reagan is looking to Superior for satisfaction of any amounts paid on the basis of Reagan's breach of the contract and warranties. The gravamen of the third-party petition is indemnification, and we shall treat it as such.

Though at one time founded upon an implied contract, today the right to indemnity is generally regarded as equitable in nature. *City of Wood River, supra* (view that implied indemnity finds its roots in principles of equity is consistent with Nebraska law). See, also, *Shore v. Minneapolis Auto Auction, Inc.*, 410 N.W.2d 862 (Minn. App. 1987); *Howell v. River Products Co.*, 379 N.W.2d 919 (Iowa 1986). The Uniform Commercial Code provides that "[u]nless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principle [sic] and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." Neb. U.C.C. § 1-103 (Reissue 1980). Thus, the general law of indemnity supplements the provisions of the Uniform Commercial Code. *Wilson v. Dodge Trucks, Inc.*, 238 Ga. 636, 235 S.E.2d 142 (1977). Notice of suit or tender of defense is not ordinarily a condition precedent to recovery on an indemnity contract, even as to a liability incurred or determined in a prior action against the indemnitee. *Insurance Co. of North America v. Hawkins*, 197 Neb. 126, 246 N.W.2d 878 (1976). Here, Reagan brought Superior into the suit more than a year before

the Warners' case went to trial. Superior's argument that Reagan's third-party suit is barred under the provisions of §§ 2-607 and 2-608 is without merit.

Disposal of Superior's arguments regarding the judgment on the third-party petition does not end the matter, however, for Reagan contends that the trial court erred in failing to award Reagan the full amount of damages awarded the Warners. Reagan argues that the trial court erroneously applied a theory of contribution, rather than indemnification.

Under Nebraska law, indemnification is available when one party is compelled to pay money which in justice another ought to pay, or has agreed to pay, unless the party making the payment is barred by the wrongful nature of his conduct. *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 232 Neb. 763, 443 N.W.2d 872 (1989). Indemnification is distinguishable from the closely related remedy of contribution in that the latter involves a sharing of the loss between parties jointly liable. *Strong v. Nebraska Natural Gas Co.*, 476 F. Supp. 1170 (D. Neb. 1979).

Though most often applied in the context of tort claims, courts in other jurisdictions have awarded indemnification in favor of the retail seller of a good and against a manufacturer or supplier liable to the retailer on purely contractual grounds. See, e.g., *Pawelec v. Digitcom, Inc.*, 192 N.J. Super. 474, 471 A.2d 60 (1984); *Volvo of America Corp. v. Wells*, 551 S.W.2d 826 (Ky. App. 1977). However, "[i]t is generally recognized that the party seeking indemnification must have been free of any wrongdoing, and its liability is vicariously imposed." *City of Wood River*, 233 Neb. at 190, 444 N.W.2d at 311. In the tort context, we have held that indemnity is available to one who engaged in merely passive neglect, but unavailable to one who engaged in direct and active negligence. *Hiway 20 Terminal, Inc., supra*. If a party seeking indemnification is independently liable to the plaintiff, that party is limited to a claim for contribution. *Pawelec, supra*.

Here, the trial court entered judgment against Superior, on Reagan's third-party petition, in the amount of $3,867, or one-half of the amount Reagan was ordered to pay the Warners. The trial court obviously concluded that Reagan and

Superior are equally to blame for the Warners' mistreatment. With this conclusion, we agree. There is evidence that Superior knew the car was a salvaged wreck, yet affirmatively misrepresented the car's history to Reagan's representative. There is also evidence that Reagan should have known the true nature of the vehicle by the time it was sold to the Warners. While we agree with Reagan that the trial court essentially applied a contribution theory in awarding judgment on the third-party petition, we disagree with Reagan's conclusion that this constitutes error. See *Howell v. River Products Co., supra* (indemnitee entitled to two-thirds of amount awarded original plaintiff where indemnitor was responsible for two-thirds of the damage). The judgment entered on Reagan's third-party petition is within the equitable powers of the court and is therefore affirmed.

Finally, Superior argues that the trial court erred in awarding Reagan a $1,000 attorney fee as part of the judgment against Superior. However, while the trial court's written order of judgment appears to award the $1,000 attorney fee imposed against Superior to Reagan's attorney, oral comments from the bench indicate an intention that the award go to the Warners' attorney. When there is a conflict between the record of a judgment and a verbatim record of the proceedings in open court, the latter prevails. *State v. Salyers*, 239 Neb. 1002, 480 N.W.2d 173 (1992). As the award of attorney fees to the Warners was based on violation of the Uniform Deceptive Trade Practices Act and Superior was neither accused of nor found to be in violation of that act, the trial court's judgment is hereby modified to eliminate the $1,000 fee for the Warners' attorney, to be paid by Superior. As the remainder of Superior's assignments of error are subsumed in the matters discussed above, the trial court's judgment is in all other respects affirmed.

AFFIRMED AS MODIFIED.