United States Court of Appeals,

Fifth Circuit.

No. 91–1955.

Michael Lewis ADKINSON, Plaintiff,

v.

INTERNATIONAL HARVESTER COMPANY, now known as Navistar International,
Defendant–Third Party Plaintiff–Appellee,

v.

HARLO PRODUCTS CORPORATION, Third Party Defendant–Appellant.

Oct. 19, 1992.

Appeal from the United States District Court for the Southern District of Mississippi.

Before HILL,[1] KING, and DAVIS, Circuit Judges.

KING, Circuit Judge:

This diversity case comes to us on certified interlocutory appeal, pursuant to 28 U.S.C. §
1292(b), from an order denying Harlo Products Corporation's motion for summary judgment.  In this
appeal, we are asked one question:  Would the Mississippi Supreme Court supplement the state's
commercial code—particularly the provisions dealing with recovery for breach of the implied
warranty of merchantability—with principles of contribution and indemnity?  Because we conclude
that in a case such as this the Mississippi court would supplement its commercial code and apply
principles of contribution and indemnity, we reverse the district court's denial of summary judgment.


I. BACKGROUND

Over ten years ago, Michael Adkinson was severely injured when the mast assembly of a
forklift manufactured by Navistar International ("Navistar"), formerly International Harvester
Company, unexpectedly fell on him.  Adkinson subsequently filed a products liability suit against
Navistar, asserting three types of defects in the forklift.  Adkinson claimed that the mast assembly

---

[1]Senior Judge of the Eleventh Circuit, sitting by designation.

component of the forklift was defectively manufactured, that the forklift was defectively designed because no safety device prevented the mast assembly from falling, and that the warnings accompanying the forklift were inadequate.

Navistar in turn filed a third party complaint against Harlo Products Corporation ("Harlo"), the component part manufacturer of the mast assembly. Navistar sought recovery from Harlo under theories of common law indemnity, breach of express warranty, and breach of the implied warranty of merchantability. In particular, Navistar demanded payment from Harlo for any judgment rendered against Navistar on the basis of a defect in the component part manufactured by Harlo. Navistar later withdrew its express warranty claim.

At the trial of Adkinson's claims against Navistar and Navistar's claims against Harlo,[2] Adkinson's case was submitted to the jury only on the theory of strict products liability. The district court instructed jurors to return a verdict for Adkinson if they found, from a preponderance of the evidence, that the forklift was in a defective condition unreasonably dangerous when Navistar shipped the forklift and that the forklift's defective condition proximately caused Adkinson's injuries. The jury was further instructed to consider three possible defects in determining whether the forklift was in a "defective condition unreasonably dangerous." Jurors were instructed specifically to consider: (1) whether the mast assembly was defectively manufactured; (2) whether the forklift as a whole was defectively designed because it lacked a safety device that would have prevented the mast assembly from falling on someone; and (3) whether the forklift was accompanied with adequate warnings about the risk of the mast assembly free-falling. The jury returned a general verdict in favor of Adkinson and awarded him $750,000.

Following the jury's general verdict in favor of Adkinson, the district court considered

---

[2]Adkinson never joined Harlo as a defendant, but instead sought its entire recovery from Navistar.

Navistar's third party claims against Harlo. It directed a verdict in favor of Harlo on Navistar's implied warranty of merchantability claim, reasoning that Navistar had adduced no evidence on the claim. Navistar's common law indemnity claim, however, was submitted to the jury. The district court instructed jurors to return a verdict for Navistar if they found that there was a defect in the mast assembly, that this defect was the sole defect in the forklift, and that this defect was latent or not readily apparent.[3] Ultimately, the jury returned a verdict for Harlo on Navistar's common law indemnity claim.

On appeal, this court affirmed the jury's verdict of $750,000 against Navistar, but reversed the directed verdict for Harlo on Navistar's breach of implied warranty of merchantability claim. In holding that the record was sufficient to justify submission of Navistar's implied warranty claim to the jury, we reasoned that "there was evidence adduced by Adkinson from which the jury could have inferred that Harlo's warranty of merchantability to Navistar was breached." The case was then remanded to the district court.

On remand, both Navistar and Harlo filed motions for summary judgment. Harlo contended in its motion that it was entitled to judgment as a matter of law because Navistar had failed to comply with the notice provision in Mississippi's version of the Uniform Commercial Code. *See* MISS.CODE.ANN. § 75–2–607(3). Navistar claimed, in its motion for summary judgment, that because we had found sufficient evidence in the record to state a prima facie case on its breach of implied warranty claim, and because Harlo had no defense to the claim, it was entitled to judgment

---

[3]In formulating these instructions on Navistar's common law indemnity claim, the District Court relied on the instructions that were previously given to the jury on Adkinson's strict products liability claim and on the well-established Mississippi rule that a party actively at fault may not recover indemnity from another tortfeasor. *See Bush v. City of Laurel,* 215 So.2d 256, 259–60 (Miss.1968). The District Court first reasoned that if the jury found the forklift defective because it lacked a safety device to keep the mast assembly from falling or because of inadequate warnings about the risk that the mast assembly might fall, then Navistar would be adjudicated actively at fault and would be precluded from seeking indemnity under Mississippi law. The District Court further reasoned that if the jury's verdict for Adkinson was based solely on a finding that the mast assembly was defectively manufactured, then Navistar could recover on its indemnity claim against Harlo only if the manufacturing defect was latent.

as a matter of law. The district court denied both motions, finding that although Navistar's notice was adequate, there was a question of fact concerning whether it was timely. Neither Navistar nor Harlo sought appellate review of this ruling.

Harlo then filed a second motion for summary judgment. In this motion, Harlo contended that common law principles of indemnity and contribution apply to a buyer's claim against the seller for breach of the implied warranty of merchantability. Harlo reasoned that because common law principles of indemnity and contribution supplement Mississippi's commercial code, Navistar's claim for breach of the implied warranty of merchantability was barred as a matter of law. The district court denied Harlo's second motion for summary judgment and concluded that Navistar's breach of implied warranty claim is not precluded under current Mississippi law.

Recognizing that Harlo had raised an issue of first impression under Mississippi law, the district court certified the present interlocutory appeal, sua sponte, to this court, under 28 U.S.C. § 1292(b). In certifying the appeal, the district court reasoned that (1) the question raised by Harlo—namely, whether general rules of contribution and indemnity apply to a claim for breach of the implied warranty of merchantability—was a controlling question of law on which there were substantial grounds for differing opinions, and (2) an immediate appeal would materially advance the ultimate termination of the lawsuit. After Harlo filed a timely application for interlocutory appeal, we accepted certification.

## II. ANALYSIS

This certified interlocutory appeal requires us to decide whether the district court erred in refusing to grant Harlo's second motion for summary judgment.[4] Our analysis proceeds in two parts.

---

[4]An appeal under 28 U.S.C. § 1292(b) is from the certified order of the district court, not from any other orders that may have been entered in the case. *United States v. Stanley,* 483 U.S. 669, 677, 107 S.Ct. 3054, 3060, 97 L.Ed.2d 550 (1987). Our jurisdiction, although not confined to the precise question certified by the district court, is confined to the particular order appealed from. *Id.* at 677, 107 S.Ct. at 3060. In short, on a certified interlocutory appeal under section

In the first part, we determine whether the Mississippi Supreme Court would apply principles of contribution and indemnity to a breach of implied warranty of merchantability claim like Navistar's. Because we conclude that the Mississippi court would apply contribution and indemnity principles to such a claim, in the second part we explain why those principles bar Navistar's claim for breach of the implied warranty of merchantability.

A. *Determining Whether Contribution and Indemnity Principles Supplement Mississippi's Commercial Code*

Harlo argues on appeal that Navistar's breach of warranty claim is subject to Mississippi law on contribution and indemnity. We conclude that the Mississippi Supreme Court would agree for two reasons. First, the language in Mississippi's own commercial code requires Mississippi courts to supplement code provisions with principles of law and equity that have not been particularly displaced by the code. Moreover, the majority of other states considering this precise issue have concluded that principles of contribution and indemnity apply to a breach of warranty claim like Navistar's.

1. The Command of Section 75–1–103

This appeal raises a familiar problem in products liability law—the problem of distinguishing between tort and contract liability in a suit between parties to a contract.[5] Navistar argues that its

_____

1292(b), we have jurisdiction to hear only questions that are material to the lower court's certified order. *See United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1554 n. 2 (11th Cir.1990), *cert. denied,* ⸺ U.S. ⸺, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991).

> In its certified order denying Harlo's second motion for summary judgment, the District Court makes clear that the only question it addressed in denying that motion is whether, under Mississippi law, principles of contribution and indemnity apply to and bar Navistar's suit for breach of the implied warranty of merchantability. Therefore, we conclude that the other issues raised by Harlo on appeal—namely whether Navistar timely notified Harlo of its alleged breach and whether any breach by Harlo proximately caused the judgment rendered against Navistar—are not properly before us. These latter issues are not material to the District Court's order.

[5]With regard to this problem, Prosser and Keeton have observed:

> The distinction between tort and contract liability, as between parties to a contract, has become an increasingly difficult distinction to make.... The availability of both kinds of liability for precisely the same kind of harm has

U.C.C. claim against Harlo for breach of the implied warranty of merchantability is fundamentally distinct from its earlier claim for common law indemnity. Harlo, on the other hand, maintains that because the gravamen of Navistar's claim is one for contribution or indemnity, Mississippi law on those issues should control disposition of this case.

We conclude that in this case, section 75–1–103 of Mississippi's commercial code resolves the problem of distinguishing between tort and contract principles in Harlo's favor. Section 75–1–103 provides that, "[u]nless displaced by the particular provisions of this code, the principles of law and equity ... shall supplement its provisions." MISS.CODE ANN. § 75–1–103; *see also Gibson v. Manuel,* 534 So.2d 199, 201 (Miss.1988) (holding that common law principles shall supplement Mississippi's commercial code unless displaced by the code). Thus, the very statute creating Navistar's "contractual" claim[6] against Harlo contains a provision commanding that the statute be supplemented by principles of law and equity that have not been displaced by other code provisions.

In determining whether contribution and indemnity principles should apply to Navistar's breach of warranty claim, section 75–1–103 ultimately requires that we answer one question: Have principles of contribution and indemnity been displaced by the particular provisions of Mississippi's commercial code? *See* 1 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE §

---

brought about confusion and unnecessary complexity. It is to be hoped that eventually the availability of both theories—tort and contract—for the same kind of loss with different requirements both for the claimant's *prima facie* case and the defendant's affirmative defenses will be reduced in order to simplify the law and reduce the costs of litigation.

W. PAGE KEETON, DAN B. DOBBS, ROBERT E. KEETON, & DAVID G. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS 655 (5th ed. 1984).

[6]It is questionable whether Navistar's characterization of its breach of implied warranty claim as contractual in nature is completely accurate. Prosser has observed that at its inception, breach of warranty was a tort, and that warranty has never entirely lost its tort character. *See* William L. Prosser, *The Implied Warranty of Merchantable Quality,* 27 MINN.L.REV. 117, 118–19 (1943); *see also Richardson v. Clayton & Lambert Mfg. Co.,* 634 F.Supp. 1480, 1483 (N.D.Miss.1986) (opining that indemnity claim based on an implied warranty is more akin to the area of tort law than to contract law).

5, at 19–20 (3d ed. 1988). Before we answer this question, however, it will be helpful to determine whether the principles of contribution and indemnity are legal or equitable in nature.

a. *The nature of contribution and indemnity.* Commentators discussing the meaning of the word "displace" in section 1–103 have distinguished between legal and equitable principles. Professors White and Summers have noted that U.C.C. provisions "occupy the legal field except insofar as they do not "particularly' displace pre-existing legal principles." 1 WHITE & SUMMERS, *supra,* § 5, at 19. Thus, it is presumed that U.C.C. provisions were intended to displace most legal principles. Conversely, with regard to equitable principles, the presumption appears to be against displacement. As White and Summers have explained: "Code sections do not "occupy the equity field.' Rather, general equitable principles remain largely intact, for they are only rarely "particularly displaced.' " *Id.; see also J.L. Teel Co. v. Houston United Sales,* 491 So.2d 851, 861 (Miss.1986) (concluding that equitable doctrine of quantum meruit was not displaced by Mississippi's commercial code); Robert S. Summers, *General Equitable Principles Under Section 1–103 of the Uniform Commercial Code,* 72 NW.UNIV.L.REV. 906, 936 (1978) (observing that the displacement proviso of section 1–103 "must necessarily operate far more frequently with respect to so called general principles of law than with respect to general principles of equity").

Courts in jurisdictions other than Mississippi have consistently described contribution and indemnity as deriving from principles of equity. For example, the Supreme Court of Iowa recently noted that "[t]he right of indemnity is essentially equitable in nature." *Howell v. River Prods. Co.,* 379 N.W.2d 919, 921 (Iowa 1986) (citing 41 Am.Jur.2d *Indemnity* § 2, at 688 (1968)); *see also Wilson v. Krasnoff,* 560 A.2d 335, 341 (R.I.1989) (observing that while at common law the right to indemnity was contractual in nature, indemnity now may also be based on equitable principles); *Shore v. Minneapolis Auto Auction, Inc.,* 410 N.W.2d 862, 866 (Minn.Ct.App.1987) (describing indemnification as a "flexible, equitable remedy designed to accomplish a fair allocation of loss among parties"). Courts have made similar observations about the nature of contribution. *See, e.g.,*

*Hanover Ins. Co. v. Fireman's Fund Ins. Co.,* 217 Conn. 340, 353, 586 A.2d 567, 574 (1991) (explaining that the right of action for contribution is equitable in origin); *Mailliard v. Heffernen,* 418 N.W.2d 85, 86 (Iowa Ct.App.1987) (noting that doctrine of contribution rests on principles of equity and natural justice). According to the New York Court of Appeals, the "purpose of all contribution and indemnity rules is the equitable distribution of the loss occasioned by multiple defendants." *Mas v. Two Bridges Assocs.,* 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 675, 554 N.E.2d 1257, 1263 (1990).

The Mississippi Supreme Court has also alluded to the equitable nature of contribution and indemnity. In *Home Insurance Co. v. Atlas Tank Manufacturing Co.,* 230 So.2d 549, 551 (Miss.1970), the court observed with regard to indemnity principles that "[t]he general rule governing implied indemnity for tort liability is that a joint tort feasor ... may be entitled, ... upon an *equitable* consideration, to shift his responsibility to another joint tort feasor." (emphasis added). With regard to contribution principles, the Mississippi Supreme Court has stated that "in earlier times, the doctrine of contribution was enforced only in courts of equity." *Celotex Corp. v. Campbell Roofing & Metal Works, Inc.,* 352 So.2d 1316, 1319 (Miss.1977). The Mississippi court has further held that it is proper to file a contribution action in an equitable court. *Id.*

Case law from Mississippi and other states convinces us that the Mississippi Supreme Court would consider contribution and indemnity to be equitable principles under section 75–1–103. Therefore, in deciding whether those principles have been displaced by the code, we recognize that the commercial code was not intended to "occupy the equity field." 1 WHITE & SUMMERS, *supra,* § 5, at 19. In addition, we are mindful in our inquiry that general equitable principles will be "only rarely "particularly displaced' " by code provisions. *Id.*

b. *The displacement question.* Tracking the U.C.C., Mississippi's commercial code does not explicitly address the applicability of contribution and indemnity principles to a claim for breach of

the implied warranty of merchantability. The official comments to the U.C.C. do recognize that the implied warranty of merchantability protects the purchaser for resale as well as the purchaser for use. *See* U.C.C. § 2–314 cmt. 8. In addition, courts have recognized that the U.C.C. section on consequential damages, section 2–715(2), is broad enough to include an indemnification claim. *See, e.g., Safeway Stores, Inc. v. L.D. Schreiber Cheese Company,* 326 F.Supp. 504, 509–10 n. 13 (W.D.Mo.1971) (commenting on Missouri's version of section 2–715), *rev'd on other grounds,* 457 F.2d 962 (8th Cir.1972). Neither the comments to the U.C.C. nor the specific provisions relied on by Navistar, however, address the question of whether contribution and indemnity principles can bar an implied warranty of merchantability claim. At best the code is silent on this issue.

Several commentators have cautioned against finding displacement of a common law rule solely on the basis of U.C.C. silence. Professor Summers has indicated that judges should not construe section 1–103 of the U.C.C. in an unjustifiably narrow way by finding displacement "[m]erely because a section does not refer to an equitable principle." Summers, *General Equitable Principles, supra,* at 937. Professor Anderson has similarly emphasized that "[t]he fact that the [U.C.C.] is silent on a particular point and omits any reference to it does not mean that it is displaced by the Code." 1 RONALD A. ANDERSON, ANDERSON ON THE UNIFORM COMMERCIAL CODE § 1–103:8, at 70 (3d ed. 1981).

We conclude that the Mississippi Supreme Court would not find principles of contribution and indemnity displaced by silence alone, but would instead determine whether any of the provisions or policies of the commercial code conflict with these principles. *See* Robert A. Hillman, *Construction of the Uniform Commercial Code: UCC Section 1–103 and "Code" Methodology,* 18 B.C. INDUS. & COM.L.REV. 655, 686–88 (1977). Navistar relies on section 75–2–719(4) of Mississippi's commercial code, which prohibits contractual limitation of remedies for breach of the implied warranty of merchantability, to argue that the policies and provisions of Mississippi's commercial code are inconsistent with principles of contribution and indemnity. In particular, Navistar argues that the

prohibition in section 75–2–719(4) demonstrates "a strong public policy favoring the warranties implied in sales"—a policy that "precludes Harlo from excluding or modifying its warranty of merchantability."

Navistar's reliance on section 75–2–719(4) and the policies underlying that section to argue in favor of displacement appears misplaced. Section 75–2–719 is entitled "*Contractual* Modification or Limitation of Remedy." MISS. CODE ANN. § 75–2–719 (emphasis added). It has nothing to do with principles of law and equity that might modify or displace remedies for breach of the implied warranty of merchantability. Thus, it may be true that Mississippi has "a strong public policy favoring the warranties implied in sales." It may also be true that the policy embodied in section 75–2–719(4) "precludes *Harlo* from excluding or modifying its warranty of merchantability." (emphasis added). The problem is that we are not dealing with a situation in which Harlo has attempted by contract to exclude or modify its warranty, but a situation in which principles outside Mississippi's commercial code are relevant to remedies sought under the code. Section 75–2–719(4) is simply not inconsistent with the equitable principles of contribution and indemnity, nor are the policies underlying that section.

The only section with which principles of contribution and indemnity arguably could conflict is section 75–2–715, which allows a buyer to recover damages from a seller for "injury to person or property *proximately resulting* from any breach of warranty." MISS. CODE ANN. § 75–2–715(2)(b) (emphasis added). This section, which incorporates the notion of proximate cause into the analysis, plainly does not conflict with the indemnity principle sought to be applied in this case—that a party who is actively at fault may not recover indemnity from another tortfeasor. *See infra* Part II.B.1. After all, if Navistar is deemed to have been actively at fault, then Harlo's alleged breach of warranty cannot be said to have proximately caused all the damages awarded to Michael Adkinson, the injured third party in this case. One might argue, however, that the contribution principle sought to be applied in this case—that there can be no contribution between joint tortfeasors unless the tortfeasors

are "joint judgment debtors"—is inconsistent with the notion of proximate cause in section 75–2–715. *See infra* Part II.B.2. Although this argument has some merit, we determine that a Mississippi court would not equate the inconsistency with particular displacement of the contribution rule, as section 75–1–103 requires.

Accordingly, we conclude that under section 75–1–103 of Mississippi's commercial code, equitable principles of contribution and indemnity supplement code provisions that allow a buyer to recover for breach of the implied warranty of merchantability. These principles have not been displaced by particular provisions of Mississippi's code. In addition, any conflicting policies embodied in the code are insufficient to particularly displace these equitable principles. Because the command in section 75–1–103 requires a Mississippi court to supplement code provisions with principles of contribution and indemnity, we do so as well.

## 2. Decisions from Courts of Other States

Our interpretation of section 75–1–103 is buttressed by decisions from courts of other states. In interpreting commercial code provisions, the Mississippi Supreme Court has indicated that it gives "considerable weight to constructions placed upon code provisions by the highest courts of our sister states." *Bay Springs Forest Prods., Inc. v. Wade,* 435 So.2d 690, 695 (Miss.1983) (citing the uniformity provision in MISS.CODE ANN. § 75–1–102(2)(c)). Because the majority of states considering this precise issue have concluded that their commercial codes are supplemented by principles of contribution and indemnity, we are convinced that the Mississippi Supreme Court would reach a similar conclusion.

The Georgia Supreme Court was the first to address the applicability of contribution and indemnity principles to an action for breach of warranty under the U.C.C. In *Wilson v. Dodge Trucks,* 238 Ga. 636, 235 S.E.2d 142, 143 (1977), the buyer of a truck sought recovery from the truck dealer and manufacturer, on grounds of breach of express and implied warranties, for settlement

payments the buyer made to third parties who had been injured by the buyer's truck. The truck dealer and manufacturer moved for summary judgment, contending that Georgia's statute on contribution and indemnity, which required that a party seeking contribution or indemnity have a judgment rendered against him, barred the truck buyer's warranty claim. The trial court denied the motion.

The buyer argued on appeal that Georgia's statute on contribution and indemnity did not affect his rights as a buyer of goods under the U.C.C. The gist of the buyer's argument was that "the U.C.C. is a self-contained body of law which provides the exclusive governance for transactions that fall within its ambit." *Id.* at 144. The Georgia Supreme Court rejected this argument, citing its version of U.C.C. § 1–103. In particular, the *Wilson* court reasoned that because Georgia's provision relating to consequential damages did not displace the principles of contribution and indemnity, those principles continued to supplement the provisions of the U.C.C. Thus, the *Wilson* court held that summary judgment for the truck dealer and manufacturer should have been granted. *Id.*

Courts from other states agree with the reasoning of the Georgia court in *Wilson.* In *Frazer v. A.F. Munsterman, Inc.,* 123 Ill.2d 245, 268–72, 123 Ill.Dec. 473, 483–84, 527 N.E.2d 1248, 1258–59 (1983), the Illinois Supreme Court held that the trial court correctly dismissed, under Illinois indemnity and contribution law, a buyer's claim for breach of the implied warranty of merchantability. The *Munsterman* court looked to the gravamen of the buyer's complaint, and observed that although the claims were "stated as counts for breach of implied warranty," they could be regarded as claims for indemnity or contribution, both of which were barred under Illinois law. *See id.* 123 Ill.2d at 270–72, 123 Ill.Dec. at 484, 527 N.E.2d at 1259.

More recently, in *Warner v. Reagan Buick, Inc.,* 240 Neb. 668, 483 N.W.2d 764, 770 (1992), the Nebraska Supreme Court also looked to the essence of a buyer's breach of warranty claims. Because the buyer in *Warner* was seeking to recover a judgment that might be rendered against it in a suit by a third party, the Nebraska court observed that "[t]he gravamen of the [buyer's] third party

petition is indemnification, and we shall treat it as such." *Id.* The Nebraska court further concluded, citing its version of U.C.C. § 1–103, that "the general law of indemnity supplements the provisions of the Uniform Commercial Code" *Id.* at 771.

The only case cited by Navistar that supports a contrary result is *Kelly v. Hanscom Brothers, Inc.,* 231 Pa.Super. 357, 331 A.2d 737 (1975). In *Kelly,* the retailer of a toy that had caused a child to choke to death brought a breach of implied warranty of merchant ability claim against the wholesaler who had supplied the toy to the retailer. The retailer sought to recover the amount of the settlement between it and the deceased child's family. On appeal the issue was whether the rule barring indemnity between equally culpable and passively negligent tortfeasors should apply to the retailer's claim for breach of the implied warranty of merchantability. The Pennsylvania Superior Court held that the indemnity rule did not apply, reasoning that because the breach of warranty claim was contractual in nature, equivalence of culpability in the tort sense had no bearing on the claim. *Id.* at 739.

We find the decisions from the highest courts in Georgia, Illinois, and Nebraska to be persuasive. The Pennsylvania Superior Court's decision in *Kelly* omitted an important part of the analysis undertaken by the other courts—the effect of U.C.C. section 1–103. As discussed in Part II.A.1. of this opinion, section 75–1–103 of Mississippi's commercial code commands that the code's provisions be supplemented by principles of law and equity unless such principles are displaced by particular code provisions. Therefore, we conclude that the Mississippi Supreme Court would give considerable weight to the decisions that expressly address the command of U.C.C. section 1–103 in determining whether contribution and indemnity principles should apply to a breach of implied warranty claim.

In sum, in a case like this, where a purchaser sues the seller for breach of the implied warranty of merchantability and seeks to recover all or part of a judgment rendered against the purchaser in

a suit by an injured third party, principles of contribution and indemnity supplement Mississippi's commercial code. Our conclusion is based on two considerations. The first is the command of section 75–1–103, which requires courts applying Mississippi law to supplement provisions of the commercial code with principles of law and equity that have not been displaced by particular code provisions. The second consideration is the need for uniformity: The majority of states considering the issue have held that principles of contribution and indemnity can bar a breach of implied warranty claim under the U.C.C.

B. *The Effect of Contribution and Indemnity Principles on Navistar's Claim for Breach of the Implied Warranty of Merchantability*

Because we determine that contribution and indemnity principles do supplement Mississippi's commercial code, we must now explain why these principles bar Navistar's suit against Harlo for breach of the implied warranty of merchantability. Mississippi indemnity principles preclude Navistar's breach of warranty claim because a jury has already determined that Navistar was actively at fault in causing Michael Adkinson's injuries. Contribution principles bar this claim because Harlo is not a "joint judgment debtor" within the terms of the Mississippi contribution statute that governs Navistar's claim.

1. Effect of Applying Indemnity Principles

The damages Navistar seeks to recover in its breach of warranty claim represent the entire amount of damages awarded to Michael Adkinson. When the Mississippi Supreme Court confronted a similar situation in the companion cases of *Celotex Corp. v. Becknell Construction Company,* 325 So.2d 566 (Miss.1976), and *Celotex Corp. v. Campbell Roofing and Metal Works, Inc.,* 352 So.2d 1316 (Miss.1977), it treated the breach of warranty claims as claims for indemnity. *See* 352 So.2d at 1317. Therefore, we look to the gravamen of Navistar's claim and initially view it as one for indemnity.

Indemnity principles in Mississippi are well-settled. In *Bush v. City of Laurel,* 215 So.2d 256,

259–60 (Miss.1968), the Mississippi Supreme Court stated:

> When one person is required to pay money which another person in all fairness should pay, then the former may recover indemnity from the latter in the amount which he paid, provided the person making the payment has not conducted himself in a wrongful manner so as to bar his recovery.

(citing 42 C.J.S. *Indemnity* § 20 (1944)). The *Bush* court further observed that the rule respecting indemnity was "clearly set out in *St. Louis & San Francisco Railway v. United States,* 187 F.2d 925 (5th Cir.1951): "[I]n Mississippi, as generally elsewhere, a right of indemnity ... arises in favor of one not actively at fault against an active wrongdoer.' " *Bush,* 215 So.2d at 260. In *Home Insurance Co. v. Atlas Tank Manufacturing Co.,* 230 So.2d 549, 551 (Miss.1970), the Mississippi Supreme Court explained the rationale behind the rule prohibiting indemnity between two tortfeasors who are actively at fault: "[W]here the fault of each is equal in grade and similar in character, the doctrine of implied indemnity is not available since no one should be permitted to base a cause of action on his own wrong."

Applying these well-settled indemnity principles to Navistar's breach of warranty claim against Harlo, we have no trouble concluding that Navistar's claim is barred as a matter of law. In the first trial, the jury returned a verdict for Harlo on Navistar's common law indemnity claim. As the district court observed, in order to have reached its verdict for Harlo the jury must have found one or more of the following: (1) the mast assembly was not defective; (2) the mast assembly was not the sole defect in the forklift; or (3) the defect in the mast assembly was patent. Navistar conceded at oral argument that the jury's verdict for Harlo constituted a finding that Navistar was actively at fault. Accordingly, Navistar is precluded under *Bush* and *Atlas* from shifting the entire judgment rendered against it—and in favor of Michael Adkinson—to Harlo.

## 2. Effect of Applying Contribution Principles

Navistar's claim for breach of the implied warranty of merchantability might also be regarded as a claim for contribution. *See Frazer v. A.F. Munsterman, Inc.,* 123 Ill.2d 245, 270–72, 123

Ill.Dec. 473, 484, 527 N.E.2d 1248, 1259 (1988). Characterizing the breach of warranty claim as one for contribution, however, does not aid Navistar. Mississippi's law on contribution, like Mississippi's law on indemnity, bars Navistar's claim.

Although contribution in Mississippi is now governed primarily by statute, for many years Mississippi followed common law contribution principles. Those principles provided that there was "no right in joint tort feasors to obtain contribution between themselves." *Klaas v. Continental S. Lines,* 225 Miss. 94, 82 So.2d 705, 707 (1955); *see also Granquist v. Crystal Springs Lumber Co.,* 190 Miss. 572, 1 So.2d 216, 218 (1941) (citing the universal rule that, "except where modified by statute, ... joint tort feasors are not entitled to contribution between themselves or to any recovery over, one against the other"). In 1952, the Mississippi legislature passed a statute allowing joint tortfeasors, under certain limited circumstances, to obtain contribution between themselves. That statute, which was still in effect at the time Navistar's cause of action accrued, provided for contribution between joint tortfeasors only in the event that a judgment had been rendered against them. *See* MISS.CODE ANN. § 85–5–5 (repealed 1989).[7] Thus, where a plaintiff successfully sued only one of two joint tortfeasors, the Mississippi statute did not allow contribution. *See R & S Dev., Inc. v. Wilson,* 534 So.2d 1008, 1013 (Miss.1988); H. Richmond Culp III, Comment, *Fair Apportionment Among Joint Tortfeasors—A Mississippi Perspective,* 55 MISS.L.J. 709, 714 (1985).

Applying the contribution principles that were in effect at the time Navistar's breach of warranty claim accrued, we conclude that as a matter of law the claim is barred. It is undisputed that

---

[7]The "joint judgment" limitation in Mississippi's contribution statute was criticized as being inequitable. *See Wilson v. Giordano Ins. Agency, Inc.,* 475 So.2d 414, 419–420 (Miss.1985) (Robertson and Lee, JJ., dissenting) (arguing that the rule prohibiting contribution between joint tortfeasors in a pre-judgment context should be abandoned); H. Richmond Culp III, Comment, *Fair Apportionment Among Joint Tortfeasors—A Mississippi Perspective,* 55 MISS.L.J. 709, 714–16 (1985). In 1989, the Mississippi legislature removed the joint judgment limitation and gave "[a]ny defendant held jointly liable ... a right of contribution against fellow joint tort-feasors" MISS.CODE ANN. § 85–5–7(4). The new statute on contribution, however, applies only to causes of action accruing on or after July 1, 1989. *See id.* (editor's note). Because Navistar's cause of action against Harlo accrued before this date, we are precluded from applying the new contribution statute.

Michael Adkinson did not obtain a judgment from both Navistar and Harlo, and that, consequently, Navistar could not seek contribution under the statutory contribution provision in section 85–5–5. Moreover, because both sides concede that the jury found Navistar actively at fault, Navistar is precluded from recovering under common law contribution principles as well.[8]

## III. CONCLUSION

We hold that section 75–1–103 of Mississippi's commercial code requires us to apply contribution and indemnity principles to Navistar's breach of implied warranty claim against Harlo. Because those contribution and indemnity principles preclude Navistar from recovering on its claim as a matter of law, the district court should have granted Harlo's second motion for summary judgment. Therefore, we REVERSE the district court's denial of summary judgment and REMAND for entry of judgment in Harlo's favor.

---

[8]We recognize that, in applying equitable principles of contribution to Navistar's claim, we reach a result that appears inequitable. After all, through section 75–1–103 of Mississippi's commercial code, we have been required to import a contribution principle that has been criticized and that has been subsequently repudiated by the Mississippi legislature. The legislature has made clear, however, that the new, more equitable contribution statute only applies to contribution claims accruing after July 1, 1989. Because we are convinced that the Mississippi Supreme Court would apply the contribution principles in effect at the time Navistar's claim accrued, we are constrained to do the same.